**T. J. MANSFIELD CONST. CO. v. GORSLINE et al.   (No. 665–4549.)**

(Commission of Appeals of Texas, Section B. Dec. 15, 1926.)

**1. Highways �köm198—County is not liable for injury to individual from condition of highways.**

Individuals cannot recover from county for injuries resulting from a condition of the highways; the county being a governmental agency and not suable without express authoirty.

**2. Highways �köm200 — Partnership installing culverts held not liable for injuries to user of highway sustained after completion and acceptance of work by county.**

Partnership which had installed culverts in highway under contract requiring county to do back filling 'held not liable for injuries sustained by one using highway after its work had been completed and accepted by county.

**3. Negligence �köm2—Duty and nonperformance thereof is essential to "negligence."**

To constitute "negligence" there must be a duty on the part of the person charged to the person injured and legal nonperformance thereof.

[Ed. Note—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**4. Negligence �köm13—Degree of negligence depends on particular case and duty involved.**

Question of degree of negligence depends on facts in particular case, and if negligence consists of an omission of duty it must be considered with reference to character of business of person charged.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by E. B. Gorsline and another against the T. J. Mansfield Construction Company. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (278 S. W. 485), and defendant brings error. Reversed and rendered.

Fitzgerald & Hatchitt, of Wichita Falls, for plaintiff in error.

Edgar Scurry and Bullington, Boone, Humphrey & King, all of Wichita Falls, for defendants in error.

SHORT, J. The opinion of the Court of Civil Appeals in this case is to be found in 278 S. W. 485. This is a suit by the defendants in error against plaintiffs in error as a copartnership and as individuals, for personal injuries alleged to have been inflicted on Mrs. Gorsline by the negligence of the plaintiffs in error, resulting upon the trial in the district court in a judgment for $1,500 as damages inflicted upon her. The petition charged that the plaintiffs in error had contracted as independent contractors with the county of Wichita to build ten cement culverts on a public road in that county, and that in the construction of such culverts it became necessary to excavate and dig a ditch across the public road, which ditch, having been dug, had been left open, creating a dangerous condition for persons traveling the road in automobiles, and that the plaintiffs in error with notice of such condition had left said ditch open without any warning sign whatever to warn the public that the ditch was there and in a dangerous condition, and that the plaintiffs in error negligently failed to place a guard rail on either side of the ditch to warn the public, or to place lights on the side of the ditch to give such warning, by reason of which the plaintiff Mrs. Gorsline was injured to the extent set out in the petition.

The application for the writ of error, which was granted, and the case submitted to this section of the commission for disposition, contains seven assignments of error alleged to have been committed by the Court of Civil Appeals in its affirmance of the judgment of the district court. The first assignment of error challenges the correctness of the opinion of the Court of Civil Appeals on the ground that the plaintiffs in error, having completed all of their work and the county having accepted it and taken full control of the highway before the accident occurred, were under no obligation to maintain signals or warning signs on said highway, and therefore not liable for such injuries as defendant in error received. The second assignment was based upon the alleged error of the Court of Civil Appeals in holding that the plaintiffs in error were independent contractors and that the relation of master and servant did not exist between Wichita county and plaintiffs in error under the contract. The third assignment challenges the correctness of the opinion of the Court of Civil Appeals in sustaining the action of the district court in refusing to permit the plaintiffs in error to introduce evidence that the character of guards, signals, and warning signs and detour route maintained by plaintiffs in error during the work was such as was satisfactory to the engineer of Wichita county, under whose supervision the work was being done. The fourth assignment of error relates to the alleged error of the trial court in permitting the defendants in error to introduce testimony of similar acts of negligence committed by plaintiffs in error at a different time and place from that complained of as a basis of plaintiffs' cause of action. The fifth assignment of error has reference to the alleged misconduct of counsel for plaintiffs in error in their argument to the jury. The sixth assignment of error challenges the correctness of the opinion of the Court of Civil Appeals in sustaining the action of the trial court in refusing to instruct the jury in accordance with a cer-

---

�kömFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tain special instruction and in giving another in place of it when the jury returned for additional instructions; while the seventh assignment of error alleges that the Court of Civil Appeals erroneously held that the exemption of law from liability to Wichita county for this character of personal injury did not extend to and include its independent contractors. These assignments of error will be considered in so far as we think it is necessary for a proper understanding and correct disposition of the case.

The Court of Civil Appeals, in paragraph 5 on page 487 of 278 S. W., determined as a fact that the trial court found that the accident occurred at culvert No. 3 and that the evidence justifies this finding; on account of which finding it holds that it is immaterial that plaintiffs in error had finished culvert No. 2 and had turned it over to the county. This part of the opinion is challenged by the plaintiffs in error as being incorrect and not supported by any testimony; and our examination of the statement of facts has convinced us that the accident did occur at culvert No. 2 and not at culvert No. 3, and that the Court of Civil Appeals erred in holding that the accident occurred at culvert No. 3, there being no testimony in the record sufficient to justify such finding. However, we do not think it material under the facts whether the accident occurred at any particular culvert identified by number.

It appears that the contract under which the plaintiffs in error constructed the culverts provided, among other things, that "the contractor shall, at his own expense, take all necessary precautions to place proper guards for the prevention of accidents, and shall between the hours of sundown and sunrise put up and keep suitable lights and warning signals." However, this particular provision of the. contract expressly says that, this shall be done during the performance of the work, which was the construction of the culverts, and it sufficiently appears from the testimony that at the time the accident occurred all the culverts had been finished—that is to say that all the *work* which the plaintiffs in error had contracted to do for the county under the contract had come to an end. The county was to have the road placed in a passable condition by back-filling with the earth taken from the ditches after the culverts had been constructed, and it seems that all of this work as to nine of the culverts had been done by the county before the accident occurred, leaving only one untouched. The accident occurred just after dark on Sunday night, and the following Monday morning the county finished its part of. the work at this culvert, having been unable to do so previously. The testimony clearly shows that in excavating the ditch where the injuries were inflicted preparatory to constructing the culvert the plaintiffs in error had thrown the dirt on the north side of the ditch, creating an embankment variously estimated from one to four feet high and above the top of the culvert. The parties, one of whom was Mrs. Gorsline, traveling in the automobile, were going north. One of the acts of negligence alleged is that the plaintiffs in error did not have a light burning as a signal or warning of the dangerous condition of the road at the point of the accident at the time of the injury. In disposing of this controversy the jury answered that the plaintiffs in error were guilty of negligence in failing to keep a warning light burning at the culvert at the time of the accident as well as in failing to maintain a guard rail at the culvert to prevent such accident. The jury further found that such negligence was the direct and proximate cause of the injury, a reasonable, compensation for which amounted to $1,500. The court in its charge defined negligence, ordinary care, and proximate cause correctly, and instructed the jury that in order to find that negligence is the proximate cause of an injury it must appear that the injury was a natural and probable result of the negligence.

[1] It is true, as contended by the plaintiffs in error, that Wichita county could not be held liable, as such, for any injuries resulting from a condition of the highways to individuals. This is on account of the fact that Wichita county is a governmental agency, a part of the state, and is therefore not suable in any court without express authority from the Legislature. The plaintiffs in error contend that on account of this fact they are not liable for the result of the negligence found by the jury to have been committed by them inasmuch as they claim they were only agents of the county doing the work of the county under a special contract and were not independent contractors. The plaintiffs in error further contend that they were not independent contractors and were not liable as such, conceding that if they were independent contractors and were guilty of negligence and had not delivered the culverts to the county, they would be liable. We do not think that it is material in this case to determine whether the plaintiffs in error were independent contractors. If the plaintiffs in error had ceased to have any control over this work and had delivered it to the county in such form as to relieve the plaintiffs in error from any further liability on account of the condition of the roadway at this particular culvert, plaintiffs in error would not be liable for the injuries sustained by Mrs. Gorsline.

[2] Plaintiff in error's first assignment of error questions the correctness of the judgment of the Court of Civil Appeals in holding that the trial court did not err in overruling plaintiff in error's first proposition of law, which was based upon the second assignment of error, this proposition being as follows:

"Plaintiff in error having completed all of the work that it had contracted to do for the county in the construction of said culverts and the county having accepted the work and having prepared the road for the traveling public, save and except at the point where the accident occurred, and the county having full control of said highway long before the accident occurred, plaintiff in error was under no obligation or duty to maintain signals or warning signs on said highway, and therefore not liable for such damages as defendants in error received."

This assignment of error, in our opinion, should be sustained and as the uncontradicted testimony establishes the facts in the proposition under this assignment, we are of the opinion that the proposition quoted is a correct statement of the law of the case. One of the provisions of the contract is as follows:

"*During the performance of the work*, the contractor shall so carry on the work that there shall be no undue interference with or hindrance to travel over the road, and the road shall be kept open to the traveling public at all times unless otherwise directed by the engineer in charge, until the work is *accepted*. The contractor shall, at his own expense take all necessary precautions to place proper guards for the prevention of accidents, and shall between the hours of sundown and sunrise put up and keep suitable lights and warning signals. Whenever the road is not closed, and it is necessary to divert traffic around any portion of the work, the contractor shall, at his own expense, maintain safe and suitable passageway for the traveling public. If, in the opinion of the engineer, it is not possible to maintain such passageway, then the contractor shall, at his own expense, erect barriers and direct the traveling public around the work by suitable signs in a manner satisfactory to the engineer." (Italics ours.)

Another provision of the contract is that:

"The work proposed to be done shall be accepted when fully completed and finished to the satisfaction of the county engineer."

This work which the plaintiffs in error were to do under the contract is shown by the uncontradicted evidence in the record to have been completed by them and accepted by the county. The witness Harris, testifying on behalf of the plaintiffs in error, among other things, said:

"I was one of the parties who helped build the 10 concrete culverts on the Iowa Park road. * * * I know where the culvert is that is alleged to be the one where Mrs. Gosline was injured. It was culvert No. 2—the second culvert—the one we call No. 2. In starting putting in those culverts we began back at the north end close to Clara, and came this way from there toward Iowa Park. After the culverts were in we tore the forms up, and that would terminate our part of the contract. The forms is what we run the concrete in. The county had an inspector on the job all of the time. Mr. Matthews was the county inspector.

* * * The inspector got his orders from the county engineer, Mr. Isbell. When we would finish a culvert and take the forms up, that was the last we had to do with the culvert. We would take the forms off and either notify the inspector that we had done so, or he would be on the job, and he in turn would notify the county engineer, and he would have the bridge covered over with dirt by the county or precinct street gang. The precinct road gang was located in Iowa Park at the time. Mr. McElzy was in charge of the gang. * * * On March 7, we had finished that job on that culvert. I notified the inspector that the job was finished. I was through, and he was notified. * * * We completed putting in the concrete on the 7th of March. On the 15th of March the forms were torn out and the inspector was notified. That was some 10 days before the accident. We delivered and turned over the work to the county when we notified him. * * * I know definitely which culvert the party driving Mrs. Gorsline is supposed to have gone into when she was injured—No. 2 that we put in."

The witness Carter testified for the plaintiffs in error as follows:

"I am one of the defendants in this suit. The culvert where this accident occurred was our No. 2 culvert, of the 10 that we constructed for the county. Mr. Isbell gave us that number; when we got the contract, he labeled our bridges, starting at the Abernathy corner, as No. 1, and 2 and so on in consecutive numbers until he reached 10. There were 10 culverts in the contract. The tenth culvert was the last one going toward Clara. * * * The culvert at which the accident occurred was culvert No. 2 from Iowa Park going north. I worked on the job there continuously, until the contract was completed. * * * I worked out there when they were pouring the concrete. That particular culvert was finished on the night of the 7th; then we went to No. 1, and we finished that up on the 8th; we were working on both of them at the same time; we poured the two floors, the 6th—no; the 5th—and we set forms on the 7th and set that bridge on the 7th, and dropped back and poured No. 1 on the 8th. I took the forms away from both bridges on the 15th; in fact I took the forms off of 4 bridges on the 15th; from No. 1, No. 2, No. 3, and 4. That was going from Iowa Park on north; took all 4 out on the 15th; I believe that I went on the 16th, on the 26th, and moved some fences; that is the last work we did on the culverts directly; that was all that we were to do under the contract on the culverts."

The witness McElvey testified for the plaintiffs in error as follows:

"I am superintendent, road superintendent, Wichita county, precinct No. 3; I was engaged in that business in March, 1923; my road camp was located at Iowa Park. * * * I remember the concrete culverts that Mr. Harris and Mr. Mansfield and Mr. Carter put in there on the Iowa Park-Clara-Abernathy road. While they were putting in those culverts, I had charge of this road crew out there. We done the backfilling on the culverts; done it with teams and fresnoes; that consists of pulling the dirt over the concrete culvert—

well, the culverts were put down different depths, some of them level with the ground, very near it, and others, I believe a few of them, a few inches higher than the level of the ground, that is, the roadbed. * * * I had received instructions the week previous to that to do that backfilling; I did not get it done sooner, because I was busy at something else. I would not say what date I received the instructions to backfill; it was one day right toward the last of the week. I did not go out with the crew there on Monday morning, and I do not know the condition exactly; I am talking about on Monday morning after the accident. * * * Filled in No. 3 the week before that."

W. P. Rogers, who was working for the county, testified that the accident occurred at culvert No. 2, and that No. 2 was the last culvert the county did the backfilling on, and this work was done on Monday morning after the accident Sunday night. He further testified that they began backfilling on the culverts after they were constructed, beginning with No. 10 or the one nearest Clara and coming toward Iowa Park, and when they came to culvert No. 2 they skipped it and back-filled No. 1, and that the third culvert had been back-filled prior to the accident, and only one culvert remained to be back-filled at the time of the accident, which was culvert No. 2.

J. M. Isbell, county inspector for Wichita county and under whose supervision the work was done, testified that when the concrete culverts were finished by the contractors the county did the backfilling in making the road suitable for travel; that he had an inspector on the work all the time who made daily reports to him of the progress of the work and the conditions thereof. He further testified that the culverts were No. 1 to No. 10, and that upon the night of the accident, the roadway was being used by the traveling public over all the culverts except No. 2, and that the county had done the backfilling on all the culverts except No. 2. No witness testified that plaintiff in error had not completed its contract or that the county had not accepted the work long before the accident.

[3, 4] An essential element of negligence is a duty; if there is no duty there can be no negligence. To constitute negligence there must appear duty on the part of the plaintiff in error to the party injured and legal nonperformance of that duty. San Antonio Railway Co. v. Morgan, 92 Tex. 102, 46 S. W. 28. The question of negligence in its degree must depend upon facts in a particular case, and if it consists of an omission of duty it must be considered with reference to the character of business in which the person charged is engaged. San Antonio Railway Co. v. Cailloutte, 79 Tex. 343, 15 S. W. 390.

It appears from the contract between the plaintiffs in error and Wichita county that the plaintiffs in error were charged with the duty to do certain things during the performance of the work which under the contract they were to do, and, it having been shown that at the time the accident occurred resulting in the injuries for which damages are claimed the plaintiffs in error were not engaged in the performance of this work, but that it had been completed and the work accepted, there was no duty resting upon the plaintiffs in error the failure to perform which could be made the basis of damages for injuries sustained by Mrs. Gorsline. Ruling Case Law, vol. 14, p. 86, lays down this proposition:

"Generally speaking, as soon as the control of the subject matter of the contract has been transferred to the employer, as a result either of the completion or stoppage of the work, he incurs the responsibilities which the law attaches to the exercise of the control; and the mere fact that the dangerous conditions which caused the injury were originally created by the negligence or other tortious act of a contractor will not afford him any protection, if he permits them to continue after it is in his power to remove them. Whether the work has been accepted in such a sense as to render the employer responsible thenceforward for the condition of the subject matter, is to be determined from the circumstances in evidence. Acts from which the assumption of a practical control over the subject matter of the contract in its completed state is inferable will render the employer chargeable with the same measure of responsibility as a formal acceptance of the results. In some jurisdictions, however, it is held that, if the defective condition which causes an injury is one which was created by the contractor and not one which was permitted by the employer to accrue after the termination of the work, the employer is not liable unless it is shown that he had knowledge of the condition or that in the exercise of due care he should have acquired knowledge thereof."

See, also, note in 3 L. R. A. (N. S.) p. 596. Evidently the negligence which is the failure to exercise that degree of care which persons of ordinary prudence would thus use under the same or similar circumstances was attributable to the failure of the duly authorized agent of Wichita county to use due diligence in filling up the culvert where the accident occurred on Saturday night or the following day before the accident occurred. Had this duty rested upon the plaintiffs in error as a part of their contract with Wichita county, under the facts found by the jury the plaintiffs in error would have been liable for damages. But, it has been seen that the contract did not require the plaintiffs in error to perform this duty, there being an absence of any affirmative testimony tending to show the existence of such a duty, and, upon the contrary, the testimony affirmatively shows that no such duty rested upon them. So, in our opinion, the defendants in error have not shown any cause of action against the plaintiffs in error.

The other assignments of error become immaterial in view of the fact that the first assignment of error has been sustained as heretofore stated, and therefore we pretermit any discussion of them and recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and as the case has been fully developed we further recommend that judgment be rendered that the defendants in error take nothing and that the plaintiffs in error recover all costs incurred in the district court, Court of Civil Appeals, and the Supreme Court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.