**UNITED STATES v. INMON.**

No. 14364.

United States Court of Appeals
Fifth Circuit.

June 30, 1953.

On Rehearing Aug. 7, 1953.

On Motion to Reinstate Judgment or to
Clarify Order Sept. 3, 1953.

·Lester S. Jayson, Attorney, Dept. of Justice, ·Washington, D. ·C., Frank B. Potter, U. S. ·Atty., Ft. Worth, Tex., Warren E. Burger, Asst. ·Atty. ·Gen., A. ·W. ·Christian, Asst. U. S. ·Atty., Dallas, Tex., Samuel D. Slade, ·Attorneys, Department of Justice, Washington, D. ·C., for appellant.

A. E. Zellers, Weatherford, Tex., for appellee.

Before HOLMES, BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Suit was brought against the United States· under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680 by Walter Daniel Inmon and his minor son, Walter Wayne Inmon, on account of injuries sustained by the son. from the explosion of an army blasting cap. The blasting cap had been found by Wayne Inmon in February, 1949, while hunting on private property, which property had ·been leased for Army training purposes as a part of Camp Wolters, Texas, during the last war.

During the war the Army had used many kinds of ammunition and explosives at Camp Wolters for the training of troops. Upon the termination of hostilities, the camp was dismantled and the Army sent men in to gather up and remove from the premises any remaining explosives and ammunition. On the outside edge of the tract in question, which was enclosed by a barbed wire fence, signs were posted warning the public of the presence and danger of explosives and warning that metal objects found in the area should not be touched or moved.[1]

After the tract of land was returned by the Army to private possession, some empty shells, duds and live ammunition were discovered thereon. Additional men were sent in by the Army to clear the area. From the time the Army released the property until the accident occurred, the barbed wire fence and the warnings signs remained on the premises. By late February, 1949, when the injury occurred, the property had been transferred four times since being leased and occupied for Army training purposes.[2]

There is evidence that both before and after the last war residents in the Camp Wolters area were in the habit of using the property in question for hunting and fishing purposes. In February, 1949, Wayne Inmon, with the permission of a brother-in-law of the sub-tenant, went hunting on the property with his twin brother and two other boys. He was fourteen years and four months of age at the time. The boys walked several miles to a place deep within the area where near a chimney they found three boxes almost buried in the ground. The boxes were covered by a piece of tin on top of which were some rocks. Inside one of the boxes they found two cartons which contained over 300 blasting caps. Wayne Inmon admitted in his testimony that printed on the cartons was the following warning: "Blasting Caps— Do ·Not ·Carry Loose In Your Pocket". The boys divided the caps between them, shot at several of them without causing any explosion and Wayne Inmon carried his caps home, leaving them in the living room. He had the caps in his possession for two or three weeks and often carried

1. One of these signs, which appears as a photographic exhibit in the case, was worded as follows:

"Warning
Beware Of Duds
All Persons Are Cautioned Not to Move Metal Objects Found Anywhere on the Range Mark the Spot and Advise Range Officer Immediately"

2. After the Army released the property, it was sold to one Lonnie Taylor. In 1947 he sold it to R. J. Alexander. Subsequently, Alexander leased it to R. B. Terrell, who sub-leased it to L. T. Woods. Woods was in possession of the property in February, 1949, and was using it for grazing cattle.

some of them around in his pocket. After seeing a boy cut one of the caps in half with a knife without causing any explosion, he was not so afraid of them as before, although he knew they were more dangerous than cartridges.[3] Finally, fearing that if he carried them in his pockets they might be jarred during play so as to explode, he carried them to a creek and threw most of them away.

On February 26, 1949, almost a month after finding the caps, Wayne Inmon was at home recuperating from an attack of appendicitis. His grandmother, who lived with his family, found one of the caps while sweeping the living room floor. Believing it was dangerous, she tried to keep it from him and warned him that he would get hurt, but he answered that it would not hurt him and began to pry at a seal on the cap with a piece of heavy wire to remove the powder, the method he had used in the past to take apart .22 caliber cartridges. When he had pried at it five or six times, the cap exploded, as a result of which he was blinded in one eye, the other eye was injured, and he lost the index finger of his left hand.

In an oral opinion, the District Court held "that the Government was negligent in not removing the caps, or these explosives from the premises" when it transferred the property back to private ownership after the war.[4] The Government's defense of contributory negligence was denied[5] and damages in the amount of $7,000.00 were awarded to Wayne Inmon and $1,000.00 to his father.

The Government contends that, having transferred the property back to private ownership, it owed no duty to respond in damages under the Tort Claims Act for accidental injury resulting from the dangerous or defective condition of the property; that, in any event, it fulfilled whatever duties a landowner would have owed to Wayne Inmon, as a trespasser or at most a bare licensee;[6] that there is no evidence to support the finding that it was negligent or that its conduct was the proximate cause of the injuries, but that Wayne Inmon was clearly guilty of contributory negligence barring any recovery; and finally, that the special liability of a landowner for the dangerous condition of his premises is not a respondeat superior type of liability which would afford a basis for recovery under the Federal Tort Claims Act.

Appellee contends that it was the duty of the Government through its servants and employees, to maintain proper custody of the blasting caps and especially to remove them from the premises when the property was transferred back to private ownership; that such duty continued even though the

3. The evidence shows that although Wayne Inmon was unfamiliar with blasting caps, he was experienced in the use of rifles and shotguns and had some knowledge of cartridges. He had on occasion taken cartridges and shotgun shells apart so he could remove and light the powder therein. He testified that the caps resembled cartridges but were about 2½ inches long, "about as big around as a lead pencil", and he thought they were "like those regular Army blank shells."

4. In substance, the complaint had alleged that there was a duty on the part of the Government to remove "all dynamite caps, explosives and live ammunition" from the land, and that such duty was owed to the future owners of the land, and tenants, and even to third persons coming upon the land.

5. In so holding, the Trial Court found that the fact that Wayne Inmon was in-

clined from his own experience to classify the danger in handling the caps with that of .22 caliber cartridges, his lack of experience with blasting caps, and the failure of the caps to explode when the boys shot at them and when another boy cut one in half with a knife, had "disarmed" him; which facts and circumstances were sufficient to exonerate him from contributory negligence.

6. The Government argues that although Zeb Vance, brother-in-law of the subtenant Woods, gave Wayne Inmon permission to hunt on the property, he actually was a trespasser, since Vance was neither the owner of the property nor a tenant and there was no showing that he had any authority to grant such permission other than the mere marital relationship. However, the Trial Court found that "the lessee" permitted the plaintiff to go upon the ground for hunting purposes.

property changed hands four times after the Government relinquished possession and control, and was further owed to Wayne Inmon, a licensee of a subsequent transferee of the property; and that the Government's initial failure to remove the caps upon release of the property constituted actionable negligence under the Tort Claims Act.

■ Generally, the liability of a grantor of real property for the dangerous or defective condition of the premises ceases upon the transfer of possession and control, regardless of whether the person injured is the transferee, or some third person to whom a duty of care is owed. See Restatement, Torts, Secs. 352, 354; Virginian R. Co. v. Mullens, 271 U.S. 220, 46 S.Ct. 526, 70 L.Ed. 915. The rule is subject to the qualification that, if the grantor knows of a latent defect or danger on the premises, and misleads the transferee into believing the premises are safe, or fails to disclose the defect when he has reason to believe that it will not be discovered by him, he may nevertheless be liable for any injury resulting therefrom. Restatement, Torts, Sec. 353; see, also, Sec. 354, Com. b. However, the exception to the general rule of non-liability is not applicable here because it was not sufficiently shown that the Government had actual knowledge of the presence of the particular blasting caps at the time it released the property, and certainly the Government never represented to the subsequent transferee of the property or to Wayne Inmon that the premises were safe or free from explosives. The fence and warning signs left on the premises by the Government are conclusive proof to the contrary. Under the same set of facts, a private person or corporation would not be liable, and the Federal Tort Claims Act waives immunity of the Government to suit only if a private individual would be liable under the same circumstances. Feres v. United States, 340 U.S. 135, 141, 71 S.Ct. 153, 95 L.Ed. 152.

Throughout the case runs the suggestion or contention that the Government owed an absolute duty to remove the explosives at the time the property was transferred.

In the very recent case of Dalehite v. United States, 73 S.Ct. 956, 972, the Supreme Court expressly repudiated any "slight residue of theory of absolute liability without fault" of the Government under this Act and reiterated that the Act "is to be invoked only on a 'negligent or wrongful act or omission' of an employee."

■ Specifically, under the Federal Tort Claims Act, the United States is responsible for injuries caused by negligence or wrongful act or omission of an employee of the Government, if a private person would be liable in accordance with the law of the state or place where the act or omission occurred. Ford v. United States, 10 Cir., 200 F.2d 272, at page 274; 28 U.S. C.A. §§ 1346(b), 2671–2680. Of course, the burden of establishing that the negligent act or omission proximately causing the injury was committed by employees of the Government acting within the scope of their employment rested upon the plaintiffs. United States v. Campbell, 5 Cir., 172 F.2d 500, 503, certiorari denied 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757; Hubsch v. United States, 5 Cir., 174 F.2d 7. Here, there was no proof of any particular act or omission on the part of any employee of the Government which might constitute negligence, but plaintiffs rely largely upon the fact that Wayne Inmon found the blasting caps on property which the Government had formerly occupied, and was injured as a result. There is no proof of negligence in the use or storage of the caps during Army occupancy of the property, and no claim is made that during that period there was any duty owed to Wayne Inmon which was violated. Under such circumstances, the authorities relied on by appellee imposing liabilty for negligence in the custody, use or storage of explosives are inapplicable. See Atex Construction Co. v. Farrow, Tex.Civ.App., 71 S.W.2d 323; Houston Transp. Co. v. Grimm, Tex. Civ.App., 168 S.W.2d 892; Ratliff v. Nau, Tex.Civ.App., 36 S.W.2d 254; Bridges v. Dahl, 6 Cir., 108 F.2d 228; 19 Tex.Jur. 461, Sec. 7.

■ Assuming, however, that the employees of the United States owed a duty upon releasing the property to exercise or-

dinary care in removing or giving warning of the presence of explosives, so as to prevent injury to persons who they might reasonably have expected to use the Camp Wolters area, we think it clear that this duty was effectively discharged by the giving of adequate warning and the exercise of due care to make the premises reasonably safe. It is without dispute that when the Army vacated the premises they were left enclosed in a barbed wire fence; that men were sent in at the time and later to clear the premises of live ammunition and explosives; that warning signs were posted; and that the very cartons from which the blasting caps were removed carried full warning of their inherently dangerous propensities. Under such circumstances, there is no evidence of negligence on the part of the United States sufficient to support the judgment. See Ford v. United States, supra.

 Finally, even taking into consideration the natural and commendable adventuresome spirit and inquisitiveness of youth, we do not think that those qualities may be employed to impose liability upon the Government for the tragic results of Wayne Inmon's own conduct committed after repeated and recognized warning. Even if there were any "negligent or wrongful act or omission" of a Government employee under the Act, we think that Wayne Inmon was guilty of contributory negligence barring any recovery.

The judgment is, therefore, reversed and judgment here rendered in favor of the United States.

Reversed and rendered.

### On Petition for Rehearing

The petition for rehearing is granted to the extent that instead of judgment being here rendered in favor of the United States, the judgment of the District Court is reversed and the cause remanded for a new trial.

Reversed and remanded.

### On Motion to Reinstate Judgment or to Clarify Order

Upon further consideration, it appears that no evidence has been adduced which might establish actionable negligence against the United States and that contributory negligence on the part of the minor, Walter Wayne Inmon, has been clearly proved. On no reasonable theory may the Government's liability be established on another trial. The order of August 7, 1953, is therefore vacated and set aside and the original judgment of June 30, 1953, reversing and rendering judgment in favor of the United States is hereby reinstated.

Reversed and rendered.