Catherine Frost HARTFORD et vir,
Appellants,

v.

COOLIDGE–LOCHER COMPANY,
Appellee.

No. 13274.

Court of Civil Appeals of Texas.

San Antonio.

May 21, 1958.

Rehearing Denied June 18, 1958.

McDonald, Spann & DeAnda, Corpus
Christi, Mann & Byfield, Laredo, for ap-
pellants.

Lewright, Dyer & Redford, James W.
Wray, Jr., Corpus Christi, for appellee.

BARROW, Justice.

This is a suit by Catherine Frost Hart-
ford and husband, W. M. Hartford, against
Coolidge-Locher Company, for damages on
account of personal injuries sustained by
Mrs. Hartford on March 14, 1953, when
she slipped and fell while working for the

Chamber of Commerce in Corpus Christi, Texas. This fall took place on the first floor of the Chamber of Commerce Building, and was caused by Mrs. Hartford's slipping in some water which had leaked from an air conditioner, installed by defendant, on the second floor and collected on the tile floor where plaintiff fell. The trial was to a jury, but, at the conclusion of the evidence, the trial judge granted defendant's motion for an instructed verdict and entered judgment accordingly. Plaintiffs' appeal is from that judgment.

The trial court having granted an instructed verdict, the only question for discussion is whether or not appellants made out a prima facie case against appellee. In deciding this question we must adopt as true the evidence favorable to appellants and reject the evidence favorable to appellee.

The air conditioner involved is a large Carrier machine, designed as a cooling unit in warm weather and a heating unit in cold weather; being changed from one to the other by the operation of switches. In operating as a cooling unit, the warm air is forced around coils within the machine, which cools the air and causes the moisture in the air to become condensed and collect on these coils. The moisture falls into a drip pan under the coils and then drains into a one-inch drain pipe, which empties into a large drain constructed in the floor and out into the sewer line.

The air conditioner was installed by appellee in the Chamber of Commerce Building, which building had been constructed by the Chamber of Commerce according to its own specifications. The installation of the machine was completed and the work accepted by the Chamber of Commerce in January, 1952.

After the machine was installed, appellee entered into an inspection contract with the Chamber of Commerce which obligated appellee to make monthly inspections of the machine for a consideration of $10 per each inspection. The contract, among other things, required appellee to clean all drain screens and flush out sludge pans. The contract did not require the inspections to be made at any particular time, and did not obligate appellee to make service calls in between inspections, nor did it obligate the Chamber of Commerce to have any repairs done by appellee. The contract was a month-to-month agreement which could be terminated upon thirty days notice by either party, and provided for a written report to be made by appellee to the Chamber of Commerce.

The record shows that appellee did make monthly inspections and that upon each occasion made a written report showing what was done, and further shows that these reports were accepted and signed by the Chamber of Commerce. The last inspection prior to the accident here involved was made on February 17, 1953. The record also shows that appellee had no control over the operation and maintenance of the machine during the period between inspections, and that such control was vested in the Chamber of Commerce. It is undisputed that at the last previous inspection on February 17, 1953, the drain pipe was not cleaned and flushed out, and that the report of inspection signed by the Chamber of Commerce revealed that fact.

The record shows that on Friday, March 13, 1953, some of the employees of the Chamber of Commerce observed that the machine, located on the second floor of the building, was leaking water, whereupon Mrs. Martha Cooper, an employee, was directed by her employer to telephone appellee, which she did. Appellee told her that it could not send over a workman before Monday, and suggested that the area where the water was be roped off. The Chamber of Commerce did not rope off any area and continued to run the machine, although it was producing water at the rate of four gallons per hour.

At the time the leak was discovered on March 13, 1953, water was seen on the

second floor of the building, but no one had seen any on the first floor. However, on the next day, March 14, at the time of the accident the water had leaked down to the first floor and formed a pool into which Mrs. Hartford stepped and slipped, causing her to fall and sustain the injuries complained of.

The fact that there was no privity of contract between appellants and appellee is not questioned, and, therefore, any liability for injuries to such third persons must be predicated upon negligence, and not upon contract. The relation of appellee, Coolidge-Locher Company, to appellant Mrs. Catherine Frost Hartford was at all times that of independent contractor to a third party.

In 27 American Jurisprudence, Independent Contractors, § 55, the rule as to liability of independent contractors in such cases is clearly stated:

"The general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, even though the injury results from the contractor's failure properly to carry out his contract. When the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and the same rule is applied to subcontractors, so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor. The reason for the substitution of liability is found in the general doctrine that an action for negligence will not lie unless the defendant was under some duty, which he has omitted to perform, to the injured party at the time and place where the injury occurred."

See also, 65 C.J.S. Negligence § 95–b; 14 R.C.L., Independent Contractors, § 42; and 23 Tex.Jur. 578, Independent Contractors, § 30. This rule has also been applied by the Courts in Texas, in Blickman, Inc., v. Chilton, Tex.Civ.App., 114 S.W.2d 646; Morgan Warehouse & Commercial Co. v. Gilbert Mfg. Co., Tex.Civ.App., 60 S.W. 2d 1053; Nedler v. Neece Lumber Co., Tex.Civ.App., 63 S.W.2d 403; and Jones v. Beck, Tex.Civ.App., 109 S.W.2d 787.

■ Appellants concede this to be the rule and attempt to bring this case within one of the exceptions to the general rule. One of the exceptions relied on is, that the liability of a contractor is continued even after he has parted with his control over a stipulated work, where the work is turned over to the owner in a manner so negligently defective as to be inherently dangerous to third persons. Appellants contend that a machine which is capable of compressing tons of air and wringing out gallons of water is a dangerous instrumentality. We overrule this contention. This air conditioner, insofar as relevant to the injuries to Mrs. Hartford, is no more inherently or intrinsically dangerous than the old familiar ice box with its drain pipe and drip pan, nor the kitchen sink with its drain pipe. We are not here dealing with an instrument which causes electrocution, explosion or suffocation, but the overflow caused by a stopped up drain pipe, the cause and result of which would be obvious to the ordinary housewife.

■ Appellants contend that appellee's contract with the Chamber of Commerce was not a completed transaction, but a continuous, month to month, contract. We cannot agree with that contention. Certainly, the original installation contract was long since completed and accepted. With reference to the inspections, we think each month was a separate and complete transaction. The inspection was made, accepted and paid for on each occasion, and the contract was terminable at any time by either party. After each inspection the machine and its operation was completely under the control of the Chamber of Com-

merce, and Coolidge-Locher Company had no right to interfere or even be on the premises until the next inspection, and then only provided neither party chose to terminate the contract.

■ There is another sufficient reason why the trial court's action must be sustained. The last inspection previous to the accident was made twenty-six days before it occurred, and during that time the machine was operated by the Chamber of Commerce. On the day before the accident, the leakage was discovered on the second floor of the building, and yet the Chamber of Commerce, having been informed by appellee that it could not make a service call until three days later, continued to operate the machine and to pour out water over the premises. During this time the Chamber of Commerce took no steps to stop the leakage or to warn its employees thereof, or to do anything to safeguard them against it.

This action on the part of the Chamber of Commerce constitutes a new, independent and intervening cause, which breaks any causal connection between any act of appellee and the accident. In order for the action of appellee to be a proximate cause of the accident it must, in a direct and continuous sequence, unbroken by any new and independent or intervening cause, produce the event complained of. It is not disputed that appellee had no control over the actions of the Chamber of Commerce nor the machine itself, and we do not think appellee should have foreseen and anticipated that the Chamber of Commerce, after it knew of the leaking condition of the machine, would continue to use it without stopping the leak and without any safeguards, until it formed a pool of water on the first floor of the building. Any act of appellee is too remote. Southwestern Bell Tel. Co. v. Hardy, 131 Tex. 573, 117 S.W.2d 418; Baughn v. Platt, 123 Tex. 486, 72 S.W.2d 580; Seale v. Gulf, C. & S. F. R. Co., 65 Tex. 274. Coolidge-Locher Company could not foresee or an-

ticipate that the Chamber of Commerce, after full knowledge of the conditions, would continue to operate the machine without taking any precautions whatever. Such action was the direct cause of the accident, and it constitutes an efficient and intervening cause without which the injury would not have occurred.

Appellants complain of the action of the trial court in refusing to permit them, on the morning the case went to trial, to file an amendment to their pleadings raising a new and independent ground of recovery. This is a matter which lies within the discretion of the court, and under the circumstances we do not believe the court abused its discretion.

Having concluded that the trial court correctly disposed of the case, the judgment is affirmed.