Larry **BEALL**, Jr., et al., Appellants,

v.

**LO–VACA GATHERING COMPANY et al., Appellees.**

No. 980.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 16, 1975.

Rehearing Denied with Dissenting Opinion Dec. 31, 1975.

James E. Hope, Hope, Henderson, Hohman & Georges, San Antonio, for appellants.

S. E. Dyer, Dyer, Redford, Burnett, Wray & Woolsey, M. W. Meredith, Jr., Corpus Christi, Marvin C. Hanz, San Angelo, for appellees.

## OPINION

YOUNG, Justice.

This combination summary judgment and plea of privilege case arose from injuries sustained by a sixteen year old motorbike rider when he was wrested from his moving motorbike upon his hitting a cable strung across a private road about neck high between two utility poles. The action originated as one for personal injuries brought by Larry Beall, Sr., individually and as next of friend of his minor son, Larry Beall, Jr., against defendants Lo-Vaca Gathering Company, Edwin Wilde, Walter Wilde individually and as Independent Executor of the Estate of Fenton A. Wilde, Burkie L. Harlow and Jimmy Hall.

By judgment rendered February 28, 1975, the trial court granted Lo-Vaca's motion for summary judgment and sustained pleas of privilege filed on behalf of all other defendants, residents of Tom Green County, except for Hall. He filed only a general denial and the cause against him was severed and retained for trial in Nueces County. The Bealls appeal from that judgment.

On February 27, 1972, the younger Beall was injured while riding his motorbike west to east down a "turn row" on the property of Edwin Wilde. Young Beall was attending a motorbike contest being held on an abandoned airstrip owned by Walter Wilde and leased to Harlow and Hall for motor vehicle and motorbike races. The property upon which the racing events were being held is directly adjacent to that owned by Edwin Wilde and, in fact, portions of the abandoned airstrip extend onto Edwin Wilde's property. The airstrip itself was shaped like an inverted "N", with the parallel sides running from north to south. Running north and south parallel and near to the westernmost runway is a hard top surface known as Cemetery Road. The designated access point to the race facilities extends from Cemetery Road to the southern edge of the runway. However, the "turn row" is also open to Cemetery Road along the north edge of the runway. There was testimony that the "turn row" was also used to gain access to the race area. The "turn row" upon which young Beall was injured was east and west across the northern edge of the parallel portion of the runway approximately on the border between the adjacent tracts owned by the Wildes.

In July or August of 1970 the Concho Valley Electric Company erected two 32' utility poles in approximately the center of and with one pole on each edge of the "turn-row" about 40–50' apart to supply electricity to grain storage bins owned by

Edwin Wilde. Thereafter on October 21, 1970, Lo-Vaca leased ten acres of land from Edwin Wilde for the purpose of storing and welding pipe. The ten acres included the northern edge of the runway and that portion of the "turn row" upon which the utility poles were located. In order to allow large trucks to gain access to the storage and welding areas Lo-Vaca graded the "turn row" and spread caliche over the graded surface. To deter truck traffic from going between the poles, Lo-Vaca while in possession of the ten acres strung a wire or cable between the utility poles approximately 40"–50" off the ground. It was this cable which appellant Larry Beall struck and which was the cause of his injuries. The lease expired in April of 1971 at which time Lo-Vaca returned possession of the ten acres to Edwin Wilde.

The appellant alleges two points of error: (1) that the trial court erred in granting defendant Lo-Vaca's motion for summary judgment; and (2) that the trial court erred in sustaining the pleas of privilege of defendants Edwin Wilde, Walter Wilde individually and as Independent Executor of Estate of Fenton Wilde and Burkie Harlow. A determination of the merits of appellants' first point of error will also determine appellants' second point of error.

More precisely, appellants' first point of error is that the trial court erred in granting Lo-Vaca's motion for summary judgment because Lo-Vaca did not prove as a matter of law that there was no genuine issue of fact as to one or more essential elements of plaintiffs' cause of action. In its motion for summary judgment Lo-Vaca alleged that the appellant had proven no cause of action against it. The basis for this motion was that Lo-Vaca had vacated the premises some eight months before the accident in question and that Lo-Vaca conclusively proved that their landlord and co-appellee, Edwin Wilde, was advised of the cable between the poles and readily accepted the property in this condition. Lo-Vaca, therefore, contends that as a matter of law their liability to anyone coming onto the property ceased upon the acceptance of the property by the landlord Edwin Wilde.

The appellant relies primarily on the case of *Strakos v. Gehrig*, 360 S.W.2d 787 (Tex. Sup.1962). In *Strakos* a contractor was employed by the State to widen and improve an eight mile section of road. After completing the improvements the contractor left several open post holes covered by weeds along an old fence line. The contractor's work was accepted by the county. Thereafter the appellant Strakos fell into one of these unmarked holes and suffered severe injury. In its decision the Supreme Court rejected the decision of the lower court which relied on the case of *T. J. Mansfield Const. Co. v. Gorsline*, 288 S.W. 1067 (Tex.Comm'n App.1926) for the proposition that a contractor owed no duty to third persons for injuries suffered on property where the contractor had worked, once the property was returned and accepted by the other contracting party. In its holding in *Strakos* the Supreme Court rejected the "accepted work" doctrine and held that a contractor remained liable for negligent work done or unsafe conditions left on premises even after the premises are accepted by the other contracting party.

*Strakos* does not mean, however, that a contractor becomes strictly liable to third parties for any negligent work or defective condition left on the premises after it had been accepted. To the contrary, this decision only brings contractors within the general rules of tort litigation.

In that regard, it was stated by the Supreme Court at page 791 in the *Strakos* decision:

"    .    . in certain cases, factors or conditions may arise after the completion of the work, including the lapse of a substantial period of time, such as would compel a finding that independent causes had intervened to produce the injury.
.    .    ."

The basic holding of *Strakos* as it applies to this case is that one who is in temporary

possession and control of land, such as a contractor or lessee, will not have all liability for injury caused by acts done to the land terminate upon relinquishment of the land.

Sections 352 and 353 of the Restatement of the Law, Torts (2d), clearly set out the liability one has upon transferring land. Section 352 sets out the transferor's liability for dangerous conditions existing at time of transfer:

".   .   .   a vendor of land is not subject to liability for physical harm caused to his vendee *or others* while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." (Emphasis supplied.)

Section 353(1) is an exception to Section 352 where there are undisclosed dangerous conditions known to the vendor:

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee *and others* upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk." (Emphasis supplied.)

Further, the holding of the Court of Appeals for the 5th Circuit in *United States v. Inmon*, 205 F.2d 681 (1953) is applicable to this case. In *Inmon* the court held that the liability of a grantor of land to the grantee or third persons for the dangerous or defective conditions of the land ceased upon the transfer of possession and control. This rule is subject to the qualification that the grantee must disclose any latent defect or dangerous condition he knows or should know will not be discovered by the grantee.

For all practical purposes Lo-Vaca stood in the same position as a grantor of this land when it returned the land to their lessor, Edwin Wilde. During the six-month period preceding the termination of their lease Lo-Vaca had the exclusive right of possession, use and control over this land. Upon termination of the lease, therefore, it reconveyed the land to Edwin Wilde in much the same manner as a grantor would convey land to his grantee.

In applying the holding of *Strakos, Inmon* and the above quoted section of the *Restatement* to the facts of this case, it is clear that the trial court properly granted appellee Lo-Vaca's motion for summary judgment. This is so even though under the Supreme Court's ruling in *Strakos,* Lo-Vaca could not escape liability for the offending instrumentality simply by returning possession of the land to Edwin Wilde; and under Sections 352 and 353 of the *Restatement* Lo-Vaca had a duty to disclose this instrumentality to Edwin Wilde.

■ Lo-Vaca's summary judgment proof consisted of eighteen excerpts from the deposition of appellee Edwin Wilde. Some of Edwin Wilde's deposition testimony is as follows:

"Q Well, let's back up to fall of 1970 when Lo-Vaca first came upon your premises. Can you give me some idea in times of months after their arrival that you first became aware that there was that horizontal cable that we have been talking about?

A If I guess 3 months   .   .   .

A I'd say 3 months. That's my estimation.   .   .   .

Q Yes, sir. Then your answer would be that the cable was put across the southern and northern utility poles sometime in the year 1970.

A  End of 1970.

\*  \*  \*  \*  \*  \*

Q  When you in late 1970 noticed that the horizontal cable between the two poles was erected, what, if anything, did you do?

A  Not anything. It protected lives with them going around it. . . .

Q  Then you're saying that you did not make any protest, official or unofficial, to anybody?

\*  \*  \*  \*  .  \*  \*

A  No, sir."

Appellee Edwin Wilde further stated that Lo-Vaca cleaned up the land to his satisfaction and in April or May of 1971 left the property and never returned.

This evidence offered by appellee Lo-Vaca in support of its motion for summary judgment clearly shows that as a matter of law, Lo-Vaca had discharged its duty of disclosure to Edwin Wilde and upon vacating the premises in April or May of 1971 terminated any liability it had for constructing the horizontal cable. Its liability ceased as a matter of law at this time.

As our Supreme Court pointed out in *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.Sup.1970), the question on appeal in a summary judgment case "is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim a cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action." See also *Schrader v. Garcia,* 516 S.W.2d 690 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Holzapfel v. Brueggman,* 404 S.W.2d 916 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.).

■  When a defendant moves for summary judgment he must show as a matter of law, that he will prevail since there is no genuine fact issue as to at least one essential element of plaintiff's cause of action. The defendant must negate the plaintiff's possibility of recovery by offering summary judgment proof which shows that the defendant is entitled to prevail as a matter of law. Therefore, the defendant must show uncontrovertedly that the plaintiff cannot win the lawsuit because not only will he be unable to prove a recovery element in his cause of action but also that as to that element the defendant must prevail. *Glenn v. Prestegord,* 456 S.W.2d 901 (Tex.Sup. 1970).

The appellant here has totally failed to prove that the negligence, if any, of the appellee Lo-Vaca was the proximate cause of his injuries. There is absolutely no evidence that Lo-Vaca failed to disclose the existence of the offering instrumentality to its landlord Edwin Wilde. Therefore, Lo-Vaca's liability ceased upon acceptance of the land by Edwin Wilde and any cause of action that the appellant has, if any, must lie against the owner of the land, Edwin Wilde.

Appellants' summary judgment proof consists of the sworn affidavits of Larry Beall, Jr. and Larry Beall, Sr. Taken in a light most favorable to these appellants, these affidavits state only that Lo-Vaca leased the property from Edwin Wilde and that Lo-Vaca constructed the cable across the road. They fail to state any basis upon which this Court can find Lo-Vaca liable after it returned the land to Edwin Wilde. Additionally, there is no conflicts between appellants' affidavits and appellee Lo-Vaca's summary judgment proof from which an inconsistency over a fact issue is raised. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962). For the reasons set out above appellants' first point of error is therefore overruled.

■  Appellants' second point of error is also overruled because appellant has failed to meet the requirements of Tex.Rev.Civ. Stat.Ann. art. 1995 § 4 (1964). In order to maintain venue under § 4 of Art. 1995 there are three essential elements which must be established by the plaintiff. First, the

plaintiff must show that one of the defendants resides in the county where suit is brought. Second, the plaintiff must allege a joint cause of action between a resident or a cause of action so intimately connected with the cause of action against the nonresident defendant that the two may be joined under the rules intended to avoid multiplicity of suits. Third, the plaintiff must show a cause of action against the resident defendant. *Stockyards Nat. Bank v. Maples,* 127 Tex. 633, 95 S.W.2d 1300 (1936, opinion adopted); *Socony Mobil Oil Co., Inc. v. Southwestern Bell Tel. Co.,* 518 S.W.2d 257 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). As was stated earlier in this opinion the appellant has not established a cause of action against the resident defendant Lo-Vaca. Therefore, the trial court was correct in granting the pleas of privilege of appellees Edwin Wilde, Walter Wilde, individually and as independent executor of the estate of Fenton Wilde and Burkie Harlow.

The judgment of the trial court is therefore affirmed.

NYE, Chief Judge (dissenting on motion for rehearing).

I respectfully dissent. Appellant in his motion for rehearing points out the error of this Court in not recognizing that the Supreme Court of Texas has not adopted the Restatement of Torts, Sections 352 or 353, and the error of this Court in not recognizing that the Supreme Court has expressly held contrary to the holdings of this Court. A general statement of the facts exists in the majority opinion and, therefore, a detailed statement of the facts becomes unnecessary. However, a short summary of the pertinent facts is set forth as follows.

Lo-Vaca Gathering Company (hereafter referred to as Lo-Vaca) leased ten (10) acres of land from Edwin Wilde on October 21, 1970. Lo-Vaca's purpose for leasing the property was for storing and welding pipe. While on the property, Lo-Vaca strung a cable or wire between two utility poles for the purpose of keeping trucks from driving between the two poles. The lease expired in April, 1971. Lo-Vaca returned the property to the owner with the wire still strung between the two utility poles. It can be assumed for summary judgment purposes that the wire created a dangerous situation to users of the land.

Wilde accepted the property in this condition and was aware of the existence of the cable between the two utility poles at the time he accepted the property back from Lo-Vaca. After Wilde had come into possession of the property, the plaintiff Larry Beall, Jr. was injured when he struck the wire cable while riding his motorbike on Wilde's property.

This Court in our original opinion affirmed the trial court's action in granting Lo-Vaca's motion for summary judgment and held that: 1) Lo-Vaca, upon transferring the property back to Wilde, had a duty to disclose to Wilde the existence of the "dangerous condition"; 2) that Lo-Vaca had satisfied that duty; and, 3) that in view of such disclosure by Lo-Vaca and the acceptance of the property by Wilde, Lo-Vaca's liability to the plaintiff ceased as a matter of law at that time. I am now convinced that we were in error.

The law in Texas raises a question with respect to the legal effect given by Wilde's knowledge or awareness of the existence of the dangerous condition at the time he accepted the property back. The majority continues to assert that the existence of such factors (as knowledge and acceptance) causes Lo-Vaca's liability to plaintiffs, to cease as a matter of law at the time Wilde took possession of the property. The rule in Texas is that such factors do not cause Lo-Vaca's liability to cease, as a matter of law. On the contrary, such factors are material only to the fact question of whether it was Lo-Vaca's creation of the dangerous condition, or Wilde's negligence in accepting the property in this condition and failing to remedy the condition, that was the proximate cause of the plaintiff's injuries.

The majority applies Sections 352 and 353 of the Restatement of the Law of Torts (Second) and holds that Lo-Vaca was under a duty to disclose the dangerous condition (wire strung between the poles) to Wilde at the time Wilde retook possession, and having done so, its liability to plaintiff terminated ipso facto as a matter of law.

Although I believe that the law as set out in the Restatement of Torts, Sections 352 and 353, should be the law, I must also recognize the rule that when a principle, rule or provision of law has been decided by the highest court of the state having jurisdiction of the particular case, such decision is binding precedent on courts of lower rank when the same point is again presented in a subsequent suit. *Swilley v. McCain,* 374 S.W.2d 871 (Tex.Sup.1964); *Morriss-Buick Co. v. Pondrom,* 131 Tex. 98, 113 S.W.2d 889, 890 (1938, opinion adopted); *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.).

The Supreme Court of Texas has not as yet adopted the Restatement of Torts, Sections 352 or 353 as the law in Texas. In fact, it has actually held contrary to it. Section 352 of the Restatement of Torts (Second) is like the "accepted work" doctrine. This doctrine which is yet to be adopted in Texas is to the effect that although a contractor is found to have performed negligent work or left premises in an unsafe condition and such negligence is found to be a proximate cause of injury, he must nevertheless be held to be immune from liability, solely because his work has been complete and has been accepted in the unsafe condition. See *T. J. Mansfield Const. Co. v. Gorsline,* 288 S.W. 1067 (Tex. Comm'n App.1926). Such rule, like Section 352 of the Restatement, is not the law in Texas yet.

The "accepted work" doctrine was specifically overruled by the Supreme Court in an opinion written by Justice Norvell in *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.Sup. 1962). There, the court held that the fact that one who assumes control over a dangerous condition left by a contractor *may* be liable for injuries resulting therefrom does not mean that he who creates the danger should escape liability. The Supreme Court held that the question of liability should be determined or controlled by the fact of causation (foreseeability). The court stated: "Absence of proximate cause is not established as a matter of law simply because premises in a dangerous condition or a contractor's defective work *have been accepted.*" (Emphasis supplied.)

The Supreme Court in *Strakos,* by expressly rejecting the "accepted work" doctrine, refused to follow and made applicable the rule of law as set out in Section 352 of the Restatement of Torts (Second).

The majority, although agreeing that under the *Strakos* ruling that Lo-Vaca could not escape liability for the offending instrumentality simply by returning possession of the land to Wilde, added the exception that under the Restatement of Torts (Second), Sections 352 and 353, Lo-Vaca had a duty at the time of transferring the property back to Wilde to disclose any dangerous condition existing, and having done so, its liability ceased as a matter of law at that time. Lo-Vaca's disclosure may have mitigated its damages, or the disclosure may have raised the fact issue that the proximate cause of plaintiff's injuries rests with Wilde, the landowner, but such disclosure did not exonerate Lo-Vaca from its original mischief as a matter of law.

The factor of disclosure (or awareness) of the dangerous condition by the lessor (Wilde) and its effect was discussed in the *Strakos* opinion. There the court said:

> "The employer's (Wilde's) awareness of the danger has no bearing on the contractor's (Lo-Vaca's) duty of care. It could, of course, be material to the question of proximate cause or to the employer's negligence in accepting the work and failing to remedy a dangerous condition."

It is clear from the *Strakos* opinion that the Supreme Court did not intend that someone

in Lo-Vaca's position would be relieved of all liability merely by disclosing to Wilde the existence of the dangerous condition, but I believe that the Supreme Court intended that such disclosure or awareness would be a factor in considering the question of proximate cause; that is, was it Lo-Vaca's negligence in erecting the cable between the two utility poles that was a proximate cause of plaintiff's injuries; or was it Wilde's negligence in accepting the property with the dangerous condition and failing to remedy such dangerous condition before plaintiff became injured, that was a proximate cause of plaintiff's injuries?

The majority relies on the United States Court of Appeals case [*United States v. Inmon*, 205 F.2d 681 (CCA 5th Cir. 1953)] as controlling the law under the facts of this case. The *Inmon* case approves the general rules in Sections 352 and 353 of the Restatement of Torts, but that court's approval of the restatement does not bind the Texas Supreme Court or this Court. The Restatement of Torts, Sections 352 and 353, was in existence at the time the Supreme Court handed down the *Strakos* decision. The court had ample opportunity to then adopt the restatement, but declined to do so. Sections 352 and 353 of the restatement are in substance identical with the "accepted work doctrine" which was specifically rejected by the Supreme Court.

Before the Supreme Court's decision in *Strakos* the rule was that an independent contractor was not liable for injuries sustained by third parties after the contractor had completed the work and it had been turned over and accepted by the owner. See *Nedler v. Neece Lumber Company*, 63 S.W.2d 403 (Tex.Civ.App.—Waco 1933, no writ). To alleviate the harshness of this rule numerous exceptions developed in the Texas decisions. The primary exception to the general rule was stated by the San Antonio Court in *Hartford v. Coolidge-Locher Company*, 314 S.W.2d 445 (Tex.Civ. App.—San Antonio 1958, no writ). The court stated that "the liability of the contractor is continued even after he has part-

ed with his control over a stipulated work, where the work is turned over to the owner in a manner so negligently defective as to be inherently dangerous to third [parties]."

The majority has, therefore, announced a new rule not in accord with a single Texas case, by holding that Lo-Vaca, by giving notice to Wilde of the dangerous condition existing on the property at the time the property was returned to Wilde, excused itself of liability as a matter of law.

If the prevailing rule is to be abrogated, it is the exclusive prerogative of the Supreme Court of Texas to announce the modification. I would apply the prevailing rule; that a fact issue exists as to whether Lo-Vaca's negligence in erecting the wire between the two utility poles was a proximate cause of the plaintiff's injuries. I would reverse the trial court's granting of the summary judgment and remand the case for trial.