## DAVIS v. NATIONAL ACCEPTANCE CO.
### No. 14247.

Court of Civil Appeals of Texas. Dallas.
Oct. 6, 1950.

Rehearing Denied Nov. 3, 1950.

William Sweet, Jr., and Theo. E. Frossard, both of Dallas, for appellant.

T. M. Dalton, Jr., and Frank C. Moore, both of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from judgment of a district court of Dallas County. The National Acceptance Company, assignee of Chicago Heat-Master Company, instituted suit against A. B. Davis, d/b/a A. B. Davis & Company, on an open account which had been assigned to it. Trial was to a jury, the stated account not being controverted, and only special issues in defense and cross action or set-off were submitted. On findings that the account in suit was a part of a prior and more extended purchase order or contract made by the defendant with plaintiff's assignor for goods of like kind and character, but not honored by its assignor, as shall hereinafter be related, and because of failure of said assignor to so honor the order and because the sum of $1,491.88 was found to be a reasonable compensation for defendant's damage, the trial court, on motion non obstante veredicto, entered judgment in favor of plaintiff against the defendant for the full amount of the account in suit,— $2,488, with 6% interest from January 1, 1949 until paid; and, on express findings by the court that the verdict of the jury is not supported by the record, denied defendant any recovery on account of the alleged dishonor of its purchase order by plaintiff's assignor. In this opinion the parties will be designated as in the court below.

The suit was filed August 4, 1949. The plaintiff alleged in its petition, pertinent here, that on January 13, 1948, at the special instance and request of the defendant, its assignor (Chicago Heat-Master Company) sold and delivered to the defendant in regular course of business, the goods,

wares, and merchandise, as shown in plaintiff's stated itemized account, consisting of air conditioning units and parts in the sum of $2,488; that on January 16, 1948, for valuable consideration then paid by plaintiff to Chicago Heat-Master Company (the then owner and holder of said account), the said Company transferred and assigned the account to plaintiff; and on February 18, 1948 the plaintiff gave full and accurate notice of such transfer to the defendant and made timely demand on him for payment of same,—which was refused. Such is the basis of plaintiff's suit, and, in the main, it is not controverted.

In due time the defendant filed answer, and, on April 7, 1949, filed his "First Amended Original Answer" in which he alleged, pertinent here, that in the month of September 1947 he and the Chicago Heat-Master Company entered into an agreement whereby defendant was to become the exclusive wholesale outlet in the State of Texas for certain air conditioning equipment manufactured by Nevenger Manufacturing Company of Greenville, Illinois; that the said Heat-Master Company by Mr. Owens, its agent, servant, and employee, represented to him that it was the exclusive outlet of all products manufactured by the said Nevenger Company, and that "they were in a position and guaranteed to fill all orders for said air conditioning equipment that would be placed by defendant with them." Further, that the defendant in reliance on said agreement and representations, instituted at its own expense a sales campaign; promoting said campaign by newspaper advertisements, leaflets, and pamphlets, extolling the merits of said products and by employing salesmen to advertise and sell said products at an outlay expense of $10,000; that its salesmen took orders from various persons, firms, and corporations in the State of Texas for more than $100,000 worth of said equipment and sent such orders to the Chicago Heat-Master Company at Chicago, Illinois, with request that such orders be filled; which the said Company failed and refused to do, to defendant's damage in the sum of $10,000. Thus, on account of such failure, defendant sought judgment in the

form of a set-off claim against plaintiff's account, to wit, $10,000.

Consistent with the congested condition of the trial court docket, the cause was set for trial to a jury on November 1, 1949. During the interim, in preparation for hearing of the cause on date assigned, depositions of witnesses residing in Chicago were taken by the parties and thereafter, on October 26, 1949, less than seven days before trial and without leave of the court, the defendant filed a "Second Amended Answer" not materially different from the defense and cross action as set out in his "First Amended Petition,"—particularly as to the contract, or agreement, alleged to have been entered into with Chicago Heat-Master Company to the effect that the Company could furnish and "funnel through defendant" an unlimited supply of Nevenger air conditioning units, and as to the breach thereof and defendant's damage; but, in addition, made new allegations challenging the transfer of the account in suit by Chicago Heat-Master Company to the plaintiff, in that, "Southmoor Bank of Chicago had taken a prior assignment of the account in good faith, for valuable consideration, and at a time prior to the assignment to plaintiff. That if anybody has a claim to said account, the Southmoor Bank of Chicago has the claim and that plaintiff's claim, if it took an assignment of said account, acquired no interest in said account by reason of said facts here alleged." Also, the defendant elusively alleged that on October 7, 1947, the Chicago Heat-Master Company agreed to sell 101 units to defendant to be delivered to the defendant at Dallas, Texas, as follows: 5 units to be shipped immediately; 29 units on November 10, 1947; 30 units between January 1 and February 10, 1948. That the Chicago Heat-Master Company further agreed to sell defendant any additional units defendant shall order, together with any and all supplementary and auxiliary equipment needed for the proper installation of such units. That defendant placed his order for the 101 units with Chicago Heat-Master Company and that Company accepted said order and shipped some of the merchandise to defendant in

accordance therewith. That said contract was an indivisible contract and, if assignable at all, was assignable only in its entirety and not in part, but if it was assigned, then the assignee took the same subject to all the obligations, liabilities and equities existing under said contract.

To aforesaid "Second Amended Answer" the plaintiff, in limine, presented to the court· motion to strike said answer from the record on the ground, first, that same was filed without leave of the court; second, same came too late to advise plaintiff of the defenses alleged,—pleading surprise. The trial court, over defendant's objection, sustained plaintiff's motion and struck from the record defendant's Second Amended Answer, which action is the basis of defendant's first assignment of error in this appeal.

■ Rule 63, Texas Rules of Civil Procedure, provides: " * * * any amendment offered for filing within seven days of the date of trial or thereafter shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there be a showing that such amendment will operate as a surprise to the opposite party." See, Jungerman v. Security State Bank, Tex.Civ.App., 170 S.W.2d 252. This rule allows the trial judge to exercise his discretion in such matters, especially so where the filing will or will not operate to deny the opposite party an opportunity to meet the new issues raised for the first time in the amended petition, or operate as a surprise to the opposing party. It will be seen in defendant's amended answer that he denied under oath, Rule 93, Texas Rules of Civil Procedure, the authority of the assignor, its servant, agent, and employee to execute the assignment in suit to the plaintiff. Furthermore, the defendant raised for the first time its counter-claim, or set-off, upon breach of specific sales order or contract covering 101 units of air conditioning equipment from plaintiff's assignor as a failure of consideration for the account in suit, after having alleged in his prior pleadings a breach of an exclusive agency contract covering all of the State of Texas.

: ■■ The record in this case shows that the suit was filed and had been pending for trial for well over a year; that pre-trial had been given the parties and depositions taken relative to the issues raised in the prior pleadings. Furthermore, the trial court heard evidence on defendant's motion to strike the belated pleadings. It is a settled principle of law, in absence of showing that the action of the court was arbitrary or that substantial consequential injury resulted, that the appellate court will decline to review a ruling made by the trial court either admitting or denying the right of the party to file amended pleadings during the period in which leave to amend is required under the Rule, supra. Ablon v. Wheeler & Motter Merc. Co., Tex.Civ.App., 179 S.W. 527. We are of the opinion that the trial court in the exercise of its discretion committed no error in sustaining plaintiff's motion to strike defendant's belated pleadings, and defendant's points of error in relation thereto are overruled.

The defendant further assigns error to the action of the trial court in overruling its application for continuance after striking from the record its belated amended motion, for want of the testimony of Charles Drake,—alleging that "Mr. Drake was employed by defendant as bookkeeper, kept all the books of his company, and who is the only witness who can testify with reference to defendant's damages sustained because of a breach of contract with the Chicago Heat-Master Company as alleged in his defense of plaintiff's suit; that said witness, if present, would testify as to the contract defendant entered into with the Heat-Master Company." It will be readily seen that the application is not sufficient to advise the trial court of what the witness would specifically testify to if present,— only anticipating conclusions that afforded no evidence of what he expects to elicit from said witness, or of what he would be able to prove by said witness.

■ An application for continuance, because of the absence of a witness, shall not only state the name and residence of such witness, but also state what the movant

expects to prove by him, and in such specific terms as to advise the court of the relevancy of such testimony. The mere fact that the witness was in a position to know facts does not imply that he would give such testimony as expected of him. Rule 252, Texas Rules of Civil Procedure. While defendant's application for continuance relates that Mr. Drake (who was not subpœnæd) was defendant's bookkeeper and in a position to testify as to the contract alleged to have been entered into by defendant with Chicago Heat-Master Company's agent, yet, there was no allegation of facts to which the witness would actually testify, as to be beneficial to defendant's defense. In the absence of such specific allegations, the trial court's refusal to delay trial on the cause was not error. Especially so, in absence of the tender by affidavit or otherwise of the witness' testimony on defendant's motion for new trial. Defendant's point of error to the action of the court in overruling its application for continuance is overruled.

■■■ The defendant assigns error to the court's action in entering judgment for plaintiff for the full amount of plaintiff's account in suit and for not allowing it, on its counter claim or set-off, the amount of $1,488,—contending (1) that the assignment of the account to plaintiff by Chicago Heat-Master Company was without authority of the party executing same; (2) that the consideration for the account had failed because of breach by the assignor, Chicago Heat-Master Company, in failing and refusing to deliver to defendant the larger and extended order of date October 9, 1947 for 101 air conditioning units (of which the account in suit is a part); and (3) that defendant was entitled to recover on its counter claim or set-off in amount of $1,488 as found by the jury, because of plaintiff's assignor's failure and refusal to deliver the further items of the said 101 units.

It will be observed that defendant made no objection to the court's charge, or to the defensive issues submitted to the jury, and requested no further special issues in defense. Thus we must assume that the trial court found all necessary facts in support of its judgment. Furthermore, we are of the opinion that the verdict of the jury that the order or account in suit was a part of the order of October 9, 1947 and that the sum of $1,488 would reasonably compensate defendant for the failure of Chicago Heat-Master Company to ship the equipment specified in the order, finds no support in the evidence. In legal effect, the trial court found in its judgment that the account in suit was duly assigned to plaintiff; that plaintiff's assignor, Chicago Heat-Master Company, did not breach its contract with defendant by failing to ship the goods, wares and merchandise claimed to have been ordered by defendant on October 9, 1947; also, that the consideration foa the account in suit had not failed. The record evidence sustains the findings of the trial court.

On October 10, 1947, as defendant testified, he addressed an order to Chicago Heat-Master Company at Chicago, Illinois; offering in evidence a purported office copy of such order stating: "Enter our order and ship at once the articles and material described herein, to the consignee named below, subject to the terms and conditions of this purchase order. A. B. Davis & Company, Dallas, Texas. (He lists 101 "Nevenger" air conditioning units.) * * * Special instructions: Please promptly acknowledge receipt of this order, advise when entered and when scheduled for shipment. Send invoice and B/L to us at Dallas, Texas, USA. (Signed) A. B. Davis & Company By C. M. Drake." On November 25, 1947 defendant directed a further purchase order to Chicago Heat-Master Company in words as the above order of October 10, directing shipment of three "Hurricane" air conditioning units and two Humidistats to Griffin's, 111 North Third Street, Durant, Oklahoma, invoice to be sent to A. B. Davis & Company, Dallas, Texas. In response to this last order, on January 13, 1948 the Chicago Heat-Master Company shipped the goods and sent invoice to defendant at its resident address. There is not in evidence any other order received by the Heat-Master Company, and

no other invoice sent to defendant. This last transaction is the basis of the account in suit.

The record evidence shows that on February 28, 1948 the defendant advised the plaintiff by letter of even date (matters not related to this suit omitted) as follows: " * * * This being Saturday, it probably will not come in in time for us to service your claim with check, but I am sure we will be able to send you a check Monday covering the $2,488.00 account as invoiced by Chicago Heat-Master Company on January 13, 1948 (account in suit). For your special information, Chicago Heat-Master Company has filed authority with us to send this check direct to you. Our check, therefore, will issue in the name of your Company and go forward to your address as above given (The address given was National Acceptance Company, 111 West Monroe Street, Chicago, Illinois). We are sending this check to you with the understanding that you will not hold us responsible for the $2,203.00 invoice (not involved here) which you have notified us that you had purchased from the Chicago Heat-Master Company, as we have never received any merchandise or any invoice or any shipping manifest covering this item and recently have severed our relations with Chicago Heat-Master Company * * *. (Signed) A. B. Davis & Company By A. B. Davis." Then, too, the evidence is uncontroverted that when the plaintiff took the assignment of the account in suit and paid the consideration therefor, its managing officer contacted Mr. Davis by letter of date February 21, 1948, advising him of the assignment, to which Mr. Davis replied (omitting immaterial recitations): " * * * This will acknowledge your Registered, Special Delivery letter and Notice of Assignment by Chicago Heat-Master Company, dated February 18. As we related to you over the phone a few days ago, this account has been garnisheed, * * * but under the circumstances I am sure you can appreciate the fact that there is nothing we can do until the contesting parties settle their difference. * * * You may rest assured that in view of your legal notice and in view of the further circumstances outlined herein that we will hold this money and not pay it out to anyone until we know the proper person to whom it should be paid."

Manifestly, the order of November 25, 1947 to ship the "Hurricane" units and equipment to Durant, Oklahoma (which the evidence shows was done), is not a part of the order of October 10, 1947 for 101 "Nevenger" air conditioning units to be shipped to the defendant at Dallas, Texas; furthermore, there is no evidence in the record that Chicago Heat-Master Company acknowledged receipt of the order of October 10, 1947 as requested by defendant. It is apparent that the two orders, if the order of October 10 had been received by the Heat-Master Company, are entirely separate and distinct, and for different kinds and makes of air conditioning units.

We have carefully reviewed all assignments of error presented in this appeal, same are severally considered and overruled; judgment of the court below is affirmed.