**SCURLOCK OIL COMPANY, Appellant,**

v.

**Forrest E. ROBERTS, Appellee.**

**No. 7495.**

Court of Civil Appeals of Texas.

Texarkana.

Aug. 6, 1963.

756

Ruff Wall, Fred Whitaker, Carthage, for appellant.

Law Offices of Tom Bankhead, Carthage, for appellee.

CHADICK, Chief Justice.

This is an action for damage to land caused by negligent failure to prevent crude petroleum from leaking out of a pipeline. A judgment awarding plaintiff $2,400.00 costs, etc., is affirmed.

In conformity with the plaintiff's pleadings the trial court submitted special issues to determine the fact of alleged negligent omissions of the pipeline operator, which issue the jury answered in the affirmative and found the omissions to be the proximate cause of the plaintiff's damage. These issues are quoted, to-wit:

(No. 2). "Do you find from a preponderance of the evidence that the defendant, Scurlock Oil Company, failed to maintain its pipeline so as to prevent such oil leaking and escaping onto plaintiff's land after November, 1958?

(No. 5). "Do you find from a preponderance of the evidence that the defendant, Scurlock Oil Company, failed to provide adequate pipe to prevent the leaking and escaping of oil onto plaintiff's land after November, 1958?

(No. 8). "Do you find from a preponderance of the evidence that the defendant, Scurlock Oil Company, failed to repair its pipeline so as to prevent such oil leaking and escaping onto plaintiff's land after November, 1958?"

The jury also found in separate issues, (No. 1) that oil leaked and escaped from the pipeline onto the plaintiff's land after November, 1958, (No. 11) that oil leaked and escaped from the pipeline and polluted a lake, and (No. 12) the entire tract of land was damaged by pollution of the lake.

■ Though salt water, rather than crude petroleum, is the polluting agent in Turner v. Big Lake Oil Company, 128 Tex. 155, 96 S.W.2d 221; General Crude Oil Co. v. Aiken, 162 Tex. 104, 344 S.W.2d 668, and Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863, a principle pronounced in the first case and reaffirmed in the succeeding cases is controlling in the determination of

liability in this case. A rule embodying this principle may be synthesized in terms of crude oil as follows: The escape of crude petroleum from a pipeline will not lay the pipeline operator liable for damages proximately caused by the escaping oil unless the operator negligently causes or permits the oil to leak.

■ The Supreme Court's opinion in the Turner v. Big Lake Oil Company case quotes 1 Thompson on Negligence, § 694 et seq., with apparent approval. In that text the author uses an artificial body of water in illustrating the principle above discussed. In Sec. 706 he says: "* * * It follows, therefore, that if a dam breaks away, to the injury of property below, the owner will not be liable unless the person injured can show negligence; and if it appears in proof that the dam was well and properly built, upon a proper model, he will not be liable merely from the fact that it gave way; but otherwise, if it broke away in consequence of having been improperly constructed, or maintained in unsafe condition." Then in Sec. 707 it is said: "* * * For this rule of ordinary care exacts here, as in other cases, a degree of vigilance, attention, and skill in proportion to the probabilities of danger. In an action for damages caused by the breaking away of a dam, it will not do for the owner to say that he built it strong enough to resist ordinary freshets; he must build it strong enough to resist those extraordinary freshets which sometimes occur, and which are therefor reasonably to be anticipated." By transposition of water and dam to oil and pipeline it may be said that the pipeline operator transporting crude oil is under a duty to use ordinary care to prevent its escape and damage to others. The care required is commensurate with the oil's harm potential.

■ The appellant in this court, Scurlock Oil Company, attacks the jury's affirmative answers to issues 2, 5, and 8, initially quoted, as being without evidentiary support, and as being against the over-whelming weight and preponderance of the evidence. In reviewing a no evidence point, the evidence and legitimate inferences from it must be considered in their most favorable aspect, disregarding unfavorable evidence. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; 38 Texas Law Rev. 361. While review of an overwhelming weight and preponderance point requires of this court a consideration of all the evidence and determination of its weight and preponderance. In Re Kings Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660.

On an 800 acre farm in Panola County, Forrest E. Roberts, plaintiff in the trial court and appellee here, and his wife raise cattle and engage in associated agricultural endeavors. More than fifty years before the trial of this suit a pipeline right-of-way was procured and an eight inch diameter pipeline, now owned by Scurlock Oil Company, was constructed across the farm. The line is beneath the ground surface and runs from southwest to northeast, and at one point crosses the southeast corner of a seven acre lake constructed long after the line was laid; for some distance it is in the lake's watershed and the lake dam covers a short length of it. Transportation of oil under a pressure of from 200 to 250 lbs. per cubic inch is the sole use made of the line. Approximately two feet of the line was exposed when the lake was drained, in an area six or eight feet north of the dam normally covered by water when the lake is filled. The dam is across a slight draw and lengthwise lies generally east-west. The land slopes gently downward from south to north in the lake's watershed and the dam is placed to collect surface waters flowing to it from a northerly direction.

An oil scum formed on the water surface of the lake in the summer of 1959, and when discovered the fish in the lake were dead or dying. The lake dam was cut on July 4 that year, and the water released to allow the bed to dry. The next summer, August, 1960, a bulldozer was employed in an attempt to deepen the lake. While operating the dozer near the pipeline in the dry lake

bed petroleum saturated earth at a depth of approximately two to three feet was turned up. Because of the danger from the oil's volatile fumes the deepening operation was discontinued and the pipeline operator notified of the saturated earth. The presence of quantities of fresh oil was found. Pools of oil formed in the bulldozer tracks in the dry lake bed. The only known source of crude petroleum in the lake's vicinity was the pipeline operated by the defendant.

A representative of the pipeline appeared in response to the notice, and according to the plaintiff, "he apologized that he had ruined my lake and said 'somebody is going to have to pay' ". This same witness said the pipeline's representative stated he would "get permission to take the line out of the ground and see what was wrong, stop the leak." Evidence was offered showing the pipeline had broken below the dam on several prior occasions, causing damage to the land. The plaintiff testified to making an inspection of the line's right-of-way north (above) of the dam, and finding spots of fresh oil on the right-of-way in that area, at one point seeing a small oil bubble coming from the ground above the pipeline. In this connection he said that the earth backfilled over a portion of the line that had been uncovered seeking the source of the oil in his lake had fresh oil stains in the ditch line. Along the right-of-way above the water line of his lake he testified the area, at trial time, showed seepage of oil through the fill over the line, saying, "Spot out to the side where it seeped out there. Big spot seeped out here half as big as this floor. Two or three little spots over here from tub size to this size, just spots sticking up all through that area."

Some five or six years before the presence of oil was found in the lake the pipeline operator discontinued inspection by walking the line. Substituted was air inspection from an airplane flown along the line each week. Air patrol replaced ground patrol.

The pipeline representative that responded to the original notice testified that the line was very old, had been in the ground over fifty years, and that a pipeline would deteriorate and rust out in a much shorter time. The operator had the line uncovered for six or seven hundred feet, beginning at a point approximately forty to fifty feet north (above) of the dam, and raised it on skids for inspection. A welder testified that he did some work on old patches while the pipeline was out of the ground where weld beads were deteriorated and eaten out. He found full wrap and half wrap patches, and the pipe corroded and pitted in a few places. His only repair was to build up welds where previous weld beads were eaten out. The plaintiff was not present when the line was uncovered and inspected, being out of the state. The forty to fifty feet of the line immediately above (north) of the dam was not uncovered.

■ The language used in alleging the negligent omissions, that is, failure "to maintain", "to provide adequate pipeline" and "to repair", has an overlap in meaning, and expresses substantially the same thought. An unrepaired pipeline is very close in meaning to an unmaintained or inadequate pipeline, and vice versa. No complaint about this is urged, and it is mentioned only to clarify the fact question presented to the jury. The jury was required, as a prerequisite to recovery by the plaintiff, to find from the evidence that oil had leaked from the line, and that the operator had negligently failed, in the respects mentioned, to prevent it leaking.

The evidence in its most favorable aspect has been recited and if it supports the plaintiff's allegation it must be found to do so by the circumstances proven. There is no direct testimony of a break or opening in the pipeline through which oil escaped or that the defendant failed to repair a break, once found. However, a jury might reasonably conclude from the facts in evidence that a break had occurred which the pipeline operator negligently failed to repair. Evidence of oil saturated areas in the right-of-way above the dam, of former breaks, that the line was old, rusted and patched, the unexplained presence of oil in the lake and its vicinity, with the pipe-

line as the only source of oil has probative force and is strong evidence that oil leaked from the line and gravitated to the place it was found. Considering the character of crude petroleum and its harmful potential, the absence of more thorough patrol and inspection, failure to uncover the line within forty to fifty feet of the dam, and failure to find and repair a break is evidence from which a jury might reasonably conclude that the pipeline operator negligently failed to maintain or repair the pipe so as to prevent the oil damaging plaintiff's land. The operator's duty did not cease at a cursory or routine inspection, it was under a duty to find and stop the leak that damaged the landowner.

Turning now to the great weight and preponderance of the evidence point, it becomes necessary to recite additional facts. When the line was uncovered no oil saturated earth was found along the opening. The end of the line was closed and the pump station doubled the ordinary pressure of the oil line and maintained the extraordinary pressure for a period of time to discover leak or leaks if they existed. Pressure gauges remained constant, indicating no leak, as the gauge would reflect a lowering of pressure if the oil was leaking from the line. In addition, it was shown that inspection of the line by airplane patrol was very efficient, and that such inspection succeeded in locating very small leaks. Expert testimony was offered to show the characteristics and tendencies of oil in pipeline leaks and the direction in which oil would normally travel from a leak or break and that no leak in the line was found at any time. This and other testimony created sharply controverted fact issues for the jury to decide. The nature of this evidence is not so weighted with self-evident truth as to justify this court in saying that its great weight and preponderance is contrary to the jury's conclusions. The point is overruled. The evidence as a whole is such that its effect should be left for jury determination.

▪ Appellant's point 5 sets up for review the action of the trial judge in overruling the defendant's motion to strike plaintiff's second amended petition. The basis of the motion was that the pleading was filed five days before the date of trial, and alleged for the first time that oil and petroleum substances were still escaping from defendant's pipeline at the time the pleading was filed. The record contains no order, bill of exception, or other memorial evidencing that the motion to strike was urged upon the trial judge, denied by him, or that the judge in fact acted upon it. Pleadings may be amended at any time an amendment does not surprise opposing litigants with new matter. Rule 63, Vernon's Ann. Texas Rules.

▪ Very recently, June 12, 1963, the Supreme Court in Sabine River Authority of Texas v. Willis, Tex., 369 S.W.2d 348, 6 Tex.Sup.Ct.Journal 518, held that a motion to abate a suit would be treated on appeal as not raised in the trial court when the record did not show that the motion was called to the attention of the trial judge or acted upon by him. The authority of that case effectively disposes of the point of error, but it is important to mention that the record does not reflect that the amendment actually caught the defendant by surprise with its allegation of a continuing leak. The defendant's witnesses in the trial court testified to recent inspection of the line and denied finding a continuing leak or a leak of any kind. The burden is upon the complaining party to show the action of the trial court was arbitrary or resulted in substantial injury to him. Weaver v. Bogle, Tex.Civ.App., 325 S.W.2d 457; Davis v. National Acceptance Company, Tex.Civ.App., 233 S.W.2d 321, W.R., N.R.E.

Appellant's points of error have been given exhaustive study. The points must be overruled as reversible error is not shown. It follows that the judgment of the trial court is affirmed.