**SOCONY MOBIL COMPANY, INC.,**
Appellant,

v.

**SOUTHWESTERN BELL TELEPHONE**
CO. et al., Appellees.

No. 921.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 31, 1974.

Maurice Amidei, Dallas, for appellant.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, Adams, Graham, Lewis, Jenkins, Jones & Graham, Harlingen, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a venue case. Southwestern Bell Telephone Company brought suit on June 8, 1973, in the District Court of Hidalgo County, Texas, against C. E. Vanover, Marlin Burt, Al Bouch, Socony Mobil Company, Inc., Triangle Facilities, Inc., Continental Oil Company and Gulf Oil Corporation, for damages allegedly sustained as the result of gasoline leaking from storage tanks, pumps or lines connecting the storage tanks and pumps at three service stations in McAllen, Texas, to plaintiff's underground cables contained within an underground conduit which was beneath a street in McAllen. Socony Mobil Company, Inc. filed its plea of privilege to be sued in Dallas County, Texas, where it allegedly had its domicile and principal place of business in Texas. Plaintiff controverted the plea, and sought to maintain venue in Hidalgo County under the provisions of Subdivisions 4, 9, 9a, and 23, Article 1995, Vernon's Ann.Civ.St. Following a non-jury hearing, the plea of privilege was overruled. Mobil Oil Corporation, hereinafter called "Mobil" and the successor to Socony Mobil Company, Inc., defendant, has appealed.

Plaintiff adopted and made its original petition part of its controverting plea. Plaintiff alleged in the petition: 1) the defendants Vanover and Burt were residents of Hidalgo County, Texas; 2) the remaining named defendants were non-residents of Hidalgo County; 3) plaintiff owns an easement within the City of McAllen in which is located a set of cables within an underground conduit that runs parallel to N. 10th Street in McAllen; 4) three service stations are located at the intersection of N. 10th and Pecan Streets, one of which is a Conoco station, owned by Triangle Facilities, Inc., leased to Continental Oil Company (Conoco) and subleased to and operated by C. E. Vanover, a servant of Conoco; one of which is a Gulf station, owned by Gulf Oil Corporation (Gulf) and leased to and operated by Marlin Burt, a servant of Gulf; and one of which is a Mobil station owned by Mobil and leased to and operated by Al Bouch, a servant of Mobil.

It was further alleged that in June, 1970, in August, 1971 and in June, 1972, gasoline was discovered in the conduit near the intersection of N. 10th and Pecan Streets; that the gasoline entered the conduit from the storage tanks, pumps and lines of the three service stations and damaged the cables in the conduit; that the damages were proximately caused by certain omissions by the defendant, and by the unreasonable and negligent use of the service station properties by the defendants.

Defendant contends that plaintiff failed: 1) to plead and prove a joint cause of action against any defendant who was a resident of Hidalgo County; 2) failed to plead and prove a cause of action so intimately connected with Mobil that the two causes of action may be joined so as to prevent a multiplicity of suits; 3) failed to prove that any defendant used their property in such a manner as to be guilty of negligence; 4) failed to prove a cause of action based on trespass by defendant, or anyone else, which arose in Hidalgo County; and 5) failed to prove all of the elements of a cause of action against defendant which arose in Hidalgo County.

The locations of the three service stations, the conduit that contained the telephone cables, manhole 44, and the intersection itself, are illustrated by a drawing, which, however is not drawn to scale, as follows:

N. 10th Street is fifty feet wide. The width of Pecan Street was not established. The conduit is located in N. 10th Street, inside the east curb. Manhole 44 is located in N. 10th Street at the northwest corner of the intersection. There is also another manhole (43), located at the intersection of N. 10th Street and Nyssa Street, two blocks south of the above illustrated intersection. The telephone cables between these two manholes were the ones that were damaged by gasoline to the extent that they had to be replaced, and it was the damage to the cables between manholes 44 and 43 that gave rise to this suit. The bottom of manhole 44 is seven feet below ground level. The telephone cables are located inside the underground conduit. Manholes are required at certain intervals so that workmen may perform the necessary tasks in maintaining, splicing and repairing the cables. The conduit, between manholes is not on a level grade, but is so constructed that there is a high point between two manholes.

In June, 1970, Mr. Kirkpatrick, an engineer for plaintiff, inspected the conduit and cables contained therein at manhole 44. He found cable 9 to be in a deteriorated

condition and the section thereof (between manholes 44 and 43) was replaced. At that time, he noticed the odor of gasoline in the manhole.

Mr. Cooksey, a repair foreman for plaintiff, testified that sometime after February 1, 1971 but prior to August of that year, work was required at the intersection of N. 10th and Pecan Streets. When the work crew opened manhole 44, it was discovered that there was such an accumulation of gasoline in the manhole that work therein could not be performed in safety. Pumping operations were commenced in either July or August, 1971. One month was required to pump the gasoline out. The quantity of gasoline pumped out was not established. It was then learned that cable 7 was damaged and that the section thereof from manhole 43 to manhole 44 had to be replaced. Later, sometime between August and December, 1971, plaintiff experienced problems caused by gasoline again getting into the conduit in quantities that severely damaged the cables. Pumping operations at manhole 44 were carried on by plaintiff's repair crew regularly until the end of 1971.

In the spring of 1972, plaintiff drilled three holes in the right of way of N. 10th Street adjacent to the conduit and as close thereto as possible. The holes were immediately west of the Conoco station. Gasoline was found in the two most northerly holes. Mr. Cooksey told Mr. Parkhill, a representative of Conoco, that gasoline had been found in two of the holes. Mr. Cooksey then pulled the panel off of the south gasoline pump at the Conoco station and found the pump to be "full of gas" and that "the well at the bottom of the pump had gas in it". The next morning, a crew was working on the lines at the Conoco station. Mr. Cooksey described the work, thusly:

"They had a fiberglass line from the tank to the pump, and between the pump there was a rubber hose that had deteriorated, and they replaced it".

When asked if the construction crew did any underground work, he replied:

"Not that I know of".

Mr. Cooksey further testified that the gasoline caused so much damage that cables 7 and 11 between manholes 44 and 43 had to be replaced.

Mr. Vanover, a defendant, testified that he had operated the Conoco station under a franchise agreement with Continental Oil Company since August 1, 1969. He said that he did not know about any gasoline underground anywhere in the intersection area of N. 10th and Pecan Streets until the holes were drilled. He did nothing to determine whether or not gasoline was leaking at his station and made no underground inspection of the premises because the "gas that is in the ground there is owned solely, at that time by the company." He did not observe any hoses that were leaking, nor did he know of any gasoline down in one of his pumps. With respect to what he saw concerning the repairs of any leaks, he said:

"The Conoco representative engineers and wholesale people came in there and tore up a little bit of the driveway and replaced a small section of fiberglass, and that's it".

The fiberglass referred to apparently was a line about two inches in diameter that carried gasoline from the storage tanks to the pumps. He never did see a leak in the line and never saw any gas in the well of his pumps. He never measured the gasoline in the storage tanks and did not have to account to anyone for any gasoline inventory. He said that he paid only for the gas that went through the meters on the pumps. He further testified:

"I have no control over putting gas in the ground, checking the gas in the ground, just have no control over it whatsoever. This gas does not belong to the dealer; it belongs to the company, or the man that runs the wholesale place".

He was positive that he never, at any time, saw any gasoline in the area of the intersection, and that "all I know is what they told me". He identified "they" as "those people that were coming there and pumping water and gasoline out of the hole, and the people working on those manholes". Mr. Vanover further testified that "the only inspection I could possibly do would be just visual", and that he looked over the premises all of the time. He stated that his water and air hoses would be replaced "pretty often" because they wore out, and "I just know there wasn't gas standing on top of the hose". He said that he was not present when the base plate (of his pump) was taken off.

Plaintiff also offered into evidence Mobil's answers to certain interrogatories. According to those answers: a 4,000 gallon gasoline storage tank, and a 6,000 gallon gasoline storage tank, together with the necessary connecting lines, were installed at the Mobil station in 1960, and a 2,000 gallon storage tank and connecting lines was installed in 1964; all tanks were underground; a leak in the lines was discovered about February 1, 1970; approximately 2,000 gallons of gasoline was lost due to the leak between October, 1969 and February 1, 1970; Mobil said: "the gasoline probably evaporated and did not leak to any place or places", and "no gasoline leaked or was lost after February 1, 1970"; the lines to the tanks were replaced in February, 1970; Mobil is the successor to Socony Mobil Company, Inc., and was the owner of the station and the lot upon which it is located during the years 1969 through 1972. The relationship between Mobil and the persons who operated the station between January 1, 1969 and August 1, 1972 was that of "landlord-tenant" and "independent contractor".

■ In order to defeat a defendant's plea of privilege, the burden is on the plaintiff to allege and prove by a preponderance of the evidence that the case comes within one of the exceptions to the venue statute. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91 (1935). Venue facts must be proved by a preponderance of the evidence. Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953). Venue cannot be established by implication. Burtis v. Butler Bros., 148 Tex. 543, 226 S.W. 2d 825 (1950). In a venue hearing, the plaintiff has the same burden of proving all of the elements of a cause of action as on a trial on the merits. Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63 (1941).

■ Under Subdivision 4, Article 1995, V.A.C.S., the venue facts which must be established are: 1) one defendant must reside in the county of suit; 2) the party asserting his privilege to be sued in the county of his residence must be at least a proper party to the claim against the resident defendant; and 3) the plaintiff must have a bona fide claim against the resident defendant. Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300 (1936); 1 McDonald, Texas Civil Practice, § 4.10.2 (1965).

■■ In order to sustain venue under Subdivision 4, plaintiff was required to prove by affirmative evidence that at least one of the defendants resided in Hidalgo County, where the suit was pending. Proof of that venue fact is not made by the allegations contained in the petition or in the controverting affidavit. It was incumbent upon plaintiff, to allege either a joint cause of action against both a resident defendant and a non-resident defendant or a cause of action so intimately connected with the cause of action alleged against Mobil, the non-resident, that both were proper properties and may be joined under the rule intended to avoid a multiplicity of suits, and that plaintiff prove a cause of action against the resident defendant. Stockyards Nat. Bank v. Maples, supra; Harry Newton, Inc. v. Richards Oil Company, 385 S.W.2d 893 (Tex.Civ. App.—Austin 1965, no writ).

Mobil, in its controverting affidavit, admitted that it was a corporation and was

domiciled in Dallas County, Texas. The only evidence in the record relating to the residence of any defendant is found in the testimony of Mr. Vanover, one of the defendants herein. He testified at the hearing that he resided in McAllen, Texas, which we judicially know is in Hidalgo County. He further testified that he had had the franchise for the Conoco station since August 1, 1969. Such is the only evidence pertaining to his residence.

■ It has been held in at least three cases which involved Subdivision 4 that it is the place of residence of the defendant at the time the suit is filed that controls the venue issue. Chesbrough v. State, 465 S.W.2d 224 (Tex.Civ.App.—San Antonio 1971, no writ); Haney v. Henry, 307 S.W.2d 649 (Tex.Civ.App.—Amarillo 1957, no writ); Harry Newton, Inc. v. Richards Oil Company, supra. See also Wood v. Texas & P. Ry. Co., 213 S.W.2d 101 (Tex.Civ.App.—El Paso 1948, no writ). Here, there is no evidence that C. E. Vanover, or any other defendant, was a resident of Hidalgo County, Texas, on June 8, 1973, when plaintiff filed its suit.

■ Even if it be deemed that the record establishes the fact that Vanover was a resident of Hidalgo County at all times pertinent to this appeal, venue cannot be maintained in that county under Subdivision 4. Plaintiff did not prove a cause of action against Vanover, which was essential if plaintiff was to hold venue in Hidalgo County against Mobil. Houseman v. Mahin, 390 S.W.2d 732 (Tex.Sup.1965). Vanover was placed on the witness stand by plaintiff. He was not called as an adverse witness pursuant to Rule 182, Texas Rules of Civil Procedure. Consequently, plaintiff is bound by Vanover's testimony. Polasek v. Quinius, 438 S.W.2d 828, 836 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); Plains Creamery v. Denny, 277 S.W.2d 755 (Tex.Civ.App.—Amarillo 1954, writ ref'd n. r. e.). The evidence reveals that Vanover was the operator of the Conoco station from August 1, 1969 to the date

of the hearing (July 24, 1974) under a franchise agreement with Continental Oil Company. There is no evidence relating to his duties and responsibilities under that agreement. He stated that he had no control over the tanks wherein the gasoline was stored and that the gasoline which was in the storage tanks was owned "solely by the ·company". He further testified that any leaks were beyond his control, and that the work which was done on the station premises following the discovery by plaintiff of the gasoline in the drill holes was performed by "the Conoco representative engineers and wholesale people", and that the time which elapsed when he first heard about gasoline being found near the conduit (in the holes that were drilled) and when the Conoco people started doing something was six hours. There is no showing that Vanover was ever in control of the underground gasoline storage tanks, or that he had a duty to keep them in good repair. There are no facts in evidence from which it can be inferred that Vanover committed a trespass with respect to plaintiff's property or that he was guilty of any negligence that proximately caused the injury to plaintiff's cables. Venue in Hidalgo County as to Mobil under Subdivision 4 was not established.

■ In order to hold venue under Subdivision 9, Article 1995, V.A.C.S., plaintiff must prove: 1) that a trespass has been committed; 2) that it was committed in the county where suit was filed; and 3) that the defendant asserting its privilege committed the acts constituting the trespass, or that they were committed by another under circumstances that make the defendant legally responsible. Langford v. Kraft, 498 S.W.2d 42, 50 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.); 1 McDonald, Texas Civil Practice, § 4.17.1 (1965).

■ An affirmative act, as distinguished from mere failure to act, is necessary to constitute a trespass within the meaning of Subdivision 9. Jackson v.

McClendon, 143 Tex. 577, 187 S.W.2d 374 (1945); Ricker v. Shoemaker, 81 Tex. 22, 16 S.W. 645 (1891). Under Subdivision 9, plaintiff must prove by a preponderance of the evidence that a willful or intentional wrong was committed by the defendant. Gulf Refining Company v. Smith, 476 S.W.2d 851 (Tex.Civ.App.—Texarkana 1972, no writ); First Nat. Bank v. Childs, 231 S.W. 807 (Tex.Civ.App.—Austin 1921, writ ref'd); Scurlock Oil Company v. Joffrion, 390 S.W.2d 526 (Tex.Civ.App.—Tyler 1965, no writ); Michels v. Crouch, 122 S.W.2d 211 (Tex.Civ.App.—Eastland 1938, no writ). There is no evidence that any of the alleged omissions by Mobil were willful or intentional. No affirmative acts of negligence by Mobil were established. Venue as to Mobil cannot be maintained in Hidalgo County under Subdivision 9.

■ The venue facts necessary for plaintiff to establish in order to maintain venue in a county other than that of defendant's residence under Subdivision 9a, Article 1995, V.A.C.S. are: 1) that an act or omission of negligence occurred in the county where suit was filed; 2) such act or omission was that of defendant, or his servant, agent or representative acting within the scope of his employment; and 3) such negligence was a proximate cause of plaintiff's injury. Heldt v. McCreary, 399 S.W.2d 181 (Tex.Civ.App.—Corpus Christi 1966, no writ); Calhoun v. Padgett, 409 S.W.2d 890 (Tex.Civ.App.—Tyler 1966, no writ); Shelburne v. Christie-Hickman Drilling Company, 295 S.W.2d 476 (Tex.Civ.App.—Amarillo 1956, no writ).

The damages which plaintiff says were caused by the acts and omissions which plaintiff claimed were negligence that proximately caused the injuries to property, according to plaintiff's petition, were discovered from June 4, 1970 to June 1, 1972. A master-servant relationship between Mobil and the operator of the Mobil station was not established. There is no evidence that Al Bouch was ever a servant, agent or representative of Mobil. On the contrary, the undisputed evidence is that the operator of the station, at all times, was either a tenant or independent contractor of Mobil. The obligations and responsibilities of Mobil under such business relationships were not shown.

There is no direct evidence that Mobil, or any of its servants, agents or representatives acting within the scope and course of employment, committed any act of negligence, active or passive, in Hidalgo County. Proof, however, may be made by circumstantial evidence. But, in order to prove a fact by circumstantial evidence, "the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing. At all events they must not be equally consistent with the nonexistence of the ultimate fact. . . ." Big Three Welding Equipment Company v. Reech, 301 S.W.2d 504 (Tex.Civ.App.—San Antonio 1957, no writ).

Negligence or a failure to perform a duty that is owed by the actor to others is never presumed as a fact but must be proved by competent evidence. Jones v. Nafco Oil and Gas, Inc., 380 S.W.2d 570 (Tex.Sup.1964). An inference must be based upon a fact proved or known to be true, and cannot be based upon surmise, speculation, conjecture, guesswork or a mere possibility. Bob's Candy & Pecan Co. v. McConnell, 140 Tex. 331, 167 S.W.2d 511 (1943). A vital fact may not be established by piling inference upon inference. Schlumberger Well Sur. Corp. v. Nortex Oil and Gas Corp., 435 S.W.2d 854 (Tex.Sup.1969); Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791 (1955); Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112 (1942).

■ The escape of products from a storage facility or from a pipeline which

transports such products from such facility will not render either the owner or operator thereof liable for damages proximately caused by the escaping products unless the owner or operator negligently causes or permits the products to escape. Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961); Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221 (1936); Gulf Refining Company v. Smith, supra; Scurlock Oil Company v. Roberts, 370 S.W.2d 755 (Tex.Civ.App.—Texarkana 1963, no writ).

There is no conflicting evidence in the record. No witness was contradicted by another witness. Mobil did not present any evidence at the hearing. Following the discovery that there had been a gasoline leak at the Mobil station and the replacement of an underground line from a tank to the dispensers in February, 1970, the lines, pumps and tanks were tested and no leaks were discovered. There is no showing that there was a gasoline leak at the Mobil station thereafter.

Concerning the 2,000 gallons of gasoline that was lost, Mobil, in its answers to the interrogatories stated: "the gasoline probably evaporated and did not leak to any place or places", and "no gasoline leaked or was lost after February 1, 1970". There was no testimony from a witness, expert or otherwise, as to the source of the gasoline which caused the damage to plaintiff's cables. No holes were drilled in close proximity to the tanks, lines or pumps at the Mobil station in an attempt to determine whether or not there was an underground leak of gasoline at that station. There is no evidence of any surface condition at the Mobil station which should have put either Mobil or the station operator on notice that there was a gasoline leak from either underground or surface equipment and facilities. Both N. 10th and Pecan Streets were paved. There is no evidence relating to the condition of the tanks, lines and pumps at the Mobil station at any time from June, 1970 until June, 1972. No one expressed an opinion that gasoline leaked from any of the stations,

or that the cables were damaged by gasoline that leaked from any of them. There is no evidence as to when any station operator or owner should have made an inspection of the underground equipment at the stations. There is no evidence of negligence by Mobil.

Plaintiff argues that the doctrine of res ipsa loquitur is applicable here to establish negligence "in that all of the instrumentalities were obviously under the control of the appellant". We do not agree. Plaintiff relies upon Bearden v. Lyntegar Electric Cooperative, Inc., 454 S.W.2d 885 (Tex.Civ.App.—Amarillo 1970, no writ).

■■■ The doctrine of res ipsa loquitur is a qualification of the general rule that negligence is not to be presumed but must be affirmatively proved. The doctrine is a rule of circumstantial evidence whereby negligence may be inferred from the mere fact that an accident occurred, provided that the character of the accident and the attendant circumstances lead reasonably to the belief that in the absence of negligence, it would not have occurred, and the thing that caused the injury is shown to have been under the management and control of the defendant. Owen v. Brown, 447 S.W.2d 883, 886 (Tex.Sup.1969). In order for a presumption or inference of a defendant's negligence to arise under the doctrine, the evidence must show that the injury or damage was the result of an act or omission by the defendant. City of San Antonio v. Esquivel, 163 Tex. 222, 353 S.W.2d 410 (1962); Jones v. Nafco Oil and Gas, Inc., supra; Davis v. Castile, 257 S.W. 870 (Tex.Comm'n App.1924); 40 Tex. Jur.2d, Negligence, § 148. Mere proof of an injury, in the absence of proof in the manner in which it was received and the circumstances attending the occurrence thereof, is insufficient to warrant an inference of negligence on the part of defendant as to invoke the doctrine. Patrol Valve Co. v. Farrell, 316 S.W.2d 92 (Tex. Civ.App.—Amarillo 1958, writ ref'd n. r. e.); Alley v. Texas Electric Service Co.,

134 S.W.2d 762 (Tex.Civ.App.—Eastland 1939, no writ).

■ The Bearden case is distinguishable from the case at bar. There, the "thing" which caused the injury was shown to have been under the exclusive control and management of the defendant. That is not the case here. There is no showing that the damage to the cables was caused by any instrumentality under the management and control of Mobil. See "Res Ipsa Loquitur in Texas", by Starling T. Morris, 26 Tex.Law Rev. 257 (1948). Negligence in this case may not be presumed against Mobil under the doctrine of res ipsa loquitur.

■ Assuming, arguendo, that there was evidence that Mobil was negligent, there is no evidence that such negligence was the proximate cause of the injuries to plaintiff's cables. Causation, an essential element of proximate cause, was not established by the evidence. There is no direct evidence that there was a gasoline leak at the Mobil station from June 1970 to June, 1972, and no evidence of the condition of the tanks, lines and pumps during that interval of time except that they did not leak after February, 1970. In order to establish the vital fact that there was a gasoline leak that caused the damages sued for, that fact would, necessarily have to be proved by circumstantial evidence. In order to do so, a series of inferences must be relied on by plaintiff. First, it would have to be inferred that the 2,000 gallons of gasoline which leaked from the station during October 1969 to February, 1970 caused the injuries to the cables, or that there was a gasoline leak subsequent thereto which caused the damage; second, that Mobil, as a result of its stated business relationships with its operators, was in actual control of the station, that such operators were actually employees of Mobil, and that the acts and omissions of negligence which caused gasoline to escape from the station were committed by them within the course and scope of their employment; third, that

because gasoline leaked from a line (which was replaced) at the Mobil station during October 1969 to February, 1970, that there was a gasoline leak in the storage tanks, lines or pumps subsequent thereto; fourth, that the gasoline which leaked from the Mobil station premises migrated across N. 10th Street, entered the conduit and caused the damage to the cables (which were seven feet underground); and fifth, that Mobil did not make any inspection of its underground gasoline storage installations. It is clear to us that in order to establish the vital fact that there was a leakage of gasoline from the Mobil station which caused the injuries complained of, resort must be had to piling inferences on inferences. Furthermore, there is no evidence of any shortage in the gallonage of gasoline delivered to the Mobil station and that dispensed by the station subsequent to February, 1970. Causation was not established by competent and probative evidence. Venue in Hidalgo County as to Mobil under Subdivision 9a cannot be sustained.

■ Insofar as is relevant here, venue as to a corporation under Subdivision 23, Article 1995, V.A.C.S., is proper in a county where plaintiff's cause of action arose. A "cause of action" is established by facts which show: 1) plaintiff's primary right; and 2) defendant's act or omission which violates that right. 1 McDonald, Texas Civil Practice, § 4.30.2 (1965).

■ Under Subdivision 23, as the same affects this case, plaintiff was required to prove all of the elements of a cause of action against Mobil, and that the cause of action arose in Hidalgo County. Glenmore, Inc. v. Amador, 472 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1971, no writ); Liberty Mutual Ins. Co. v. Heard & Jones Drug Stores, Inc., 446 S.W.2d 911 (Tex.Civ.App.—Amarillo 1969, no writ); Teague Brick & Tile Co. v. Snowden, 440 S.W.2d 419 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ); Grayson Enterprises, Inc. v. Texas Key Broadcasters, Inc., 390 S.W.2d 346 (Tex.Civ.App.—Eastland

1965, writ dism'd) ; Admiral Motor Hotel of Texas, Inc. v. Community Inns, 389 S. W.2d 694 (Tex.Civ.App.—Tyler 1965, no writ).

It is established by the record that Mobil is a private corporation which is a resident of Dallas County, Texas. Plaintiff alleged a cause of action against Mobil based on trespass and negligence, but did not prove all of the elements of either action against Mobil. Consequently, no basis is shown for holding venue in Hidalgo County as to Mobil under Subdivision 23.

We have examined the statement of facts in the light most favorable to the judgment, indulged every reasonable inference in favor of findings which will support the judgment, and have reached the conclusion that venue cannot be sustained as to Mobil in Hidalgo County, Texas under either of Subdivisions 4, 9, 9a or 23, Article 1995, V.A.C.S. Mobil's points are sustained.

The judgment of the trial court is reversed and the cause is remanded with instructions that the action against Mobil be severed, and that the suit against Mobil be transferred to a District Court of Dallas County, Texas.