**SOHIO PIPELINE COMPANY,**
Appellant,

v.

**W. B. HARMON, Appellee.**

**No. 1395.**

Court of Civil Appeals of Texas,
Tyler.

March 26, 1981.

Rehearing Denied April 9, 1981.

Stephen R. Patterson, Nichols, Merriman, Patterson & Allison, Longview, for appellant.

Blake Bailey, Wellborn, Houston, Bailey, Perry & Adkison, Henderson, for appellee.

McKAY, Justice.

This is a suit for damage to land in which W. B. Harmon (Harmon) alleged that Sohio Pipeline Co. (Sohio) negligently allowed one of its pipelines carrying crude oil to become deteriorated, which resulted in crude oil and salt flowing over many acres of Harmon's land. It was further alleged by Harmon that the water became poisoned by the oil and salt flowing from the pipeline which covered the surface water on the Harmon property. By trial amendment Harmon alleges res ipsa loquitur. Sohio generally denied all of Harmon's allegations, and after a jury trial, the trial court rendered judgment for Harmon for $15,000, and Sohio appeals.

The jury found (1) the oil spill was due to the negligence of Sohio's agents, servants, or employees; (2) such negligence was a proximate cause of the damage to Harmon's land; (3) such damage was temporary; and (4) that $15,000 was the reasonable cost of repairs necessary to restore Harmon's land to its condition prior to the oil spill.

Sohio brings two points of error: (1) there was no evidence to support the submission of issue one, and (2) the evidence is factually insufficient to support the jury's answer to issue one.

A pipeline company has a duty to use ordinary care in the maintenance of its pipeline to protect property near the line from accidents which might reasonably be expected to occur, e. g., leaks and breaks in the line. *Scurlock Oil v. Harrell*, 443 S.W.2d 334, 337 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); *Scurlock Oil v. Roberts*, 370 S.W.2d 755, 757 (Tex.Civ.App. —Texarkana 1963, no writ). Following the decision in *Turner v. Big Lake Oil Co.*, 128 Tex. 155, 96 S.W.2d 221 (1936), the doctrine of strict liability has not been applied to pipeline cases, and when a malfunction does occur, the plaintiff landowner has the burden of pleading and proving the negligence of the pipeline operator. *Kennedy v. Bran-*denburg, 470 S.W.2d 789, 790 (Tex.Civ.App. —El Paso 1971, no writ). As stated in *Scurlock v. Roberts*, supra at 757:

> * * * The escape of crude petroleum from a pipeline will not lay the pipeline operator liable for damages proximately caused by the escaping oil unless the operator negligently causes or permits the oil to leak.

The doctrine of res ipsa loquitur may be applied to create an inference of negligence, 45 Tex.Jur.2d, Pipelines, Pipeline Cos. § 22, p. 348, if two elements are present: (1) the injury must be one that ordinarily does not occur if due care has been exercised, and (2) it must be caused by an instrumentality under the control of the defendants. 1 Ray, Texas Law of Evidence § 108 (Texas Practice, 1980), p. 169.

The record shows that the only possible evidence of Sohio's negligence presented by appellee came from the testimony of Mrs. Harmon in which she repeated statements which she claimed were made to her by certain Sohio employees.

Mrs. Harmon first testified to a conversation which she had with Jerry O'Donnell, a foreman for Sohio who initially reported the accident to the Harmons and obtained their permission to come on the land to examine the spill. According to Mrs. Harmon, "He (O'Donnell) said—he showed us this valve and said that it burst and broke, and the oil was spurting out all over." Counsel for Sohio objected to this testimony on the basis of hearsay, but it was admitted as an exception to that rule on the basis that it was an admission against interest by an agent of the defendant.

Jim Kendrick, a district supervisor for Sohio, had also spoken with Mrs. Harmon. Kendrick was apparently in charge of the clean-up operation on the Harmon's property after the spill and had gone to the Harmons to discuss the leak. In the words of Mrs. Harmon at trial, "(H)e showed me the valve, and said that it was an old valve and evidently it had just burst and when they found it the oil was squirting out..." Appellee places a great deal of emphasis on

the characterization of the valve as "old". No objection to this testimony was made by appellant at trial and therefore any error which may have been committed was waived.

Finally, Mrs. Harmon testified that Kendrick " . . . told me that it (the spill) was their responsibility . . . and they would take care of it." Another hearsay objection was lodged against this testimony and overruled.

█ It is well established that "statements of an agent are admissible against his principal when they accompany an authorized act . . . " 1 Ray, Law of Evidence § 1164 (Texas Practice, 1980), p. 321. The statement must, however, be closely related to the endorsed action and must not be purely voluntary or made merely in casual conversation. *LeSage v. Pryor*, 137 Tex. 455, 154 S.W.2d 446, 450 (1941); See also 24 Tex.Jur.2d Evidence § 621.

The statements by both O'Donnell and Kendrick to which Mrs. Harmon testified were made while each was engaged in an authorized act on behalf of Sohio. O'Donnell was apparently in charge of the initial investigation of the leak and had the responsibility of informing the Harmons of the mishap. Likewise, Kendrick was given the responsibility of cleaning up the oil that was spilled. Obviously, some explanation of the circumstances surrounding the spill was due the Harmons, and it is logical to assume these two emissaries were the ones to make such an explanation. Their comments are closely related enough to their official duties in the matter to constitute an admission against Sohio's interest.

The evidence conclusively shows that the leakage occurred because of the failure of a gasket on a relief valve. However, the testimony recited above constitutes the sum total of evidence presented by appellees to prove that the malfunction of the gasket was caused by Sohio's negligence.

█ We do find this testimony to be some evidence of negligence, and must therefore overrule appellant's "no evidence" point; however, we hold it is not sufficient to support a finding of negligence against Sohio. Even if the doctrine of res ipsa loquitur may be applied to the case at hand, it would not preclude this court from finding an insufficiency of the evidence before us. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 251 (Tex.1975). The rule of res ipsa loquitur is a rule of evidence only. Proof of the necessary elements of res ipsa loquitur warrants an inference of negligence but does not compel it, and such inference is rebuttable. *Wichita Falls Traction Co. v. Elliott*, 125 Tex. 184, 81 S.W.2d 659, 664 (1935); 1 Ray, Texas Law of Evidence § 108 (Texas Practice, 1980), pp. 170–171.

The statement of O'Donnell is proof only that a valve did break and does nothing to establish *why* the break occurred, e. g., deterioration of the valve. Also, it should be noted that the valve itself did not actually break; it was undisputed that the leak was caused by a faulty gasket within the valve. Therefore, O'Donnell's statement, as recited by Mrs. Harmon, provides no basis for a finding of negligence on the part of Sohio.

Secondly, Kendrick's purported characterization of the valve as "old" contradicts the undisputed testimony as to the cause of the mishap. As stated above, it was a *gasket* that failed, not the valve itself. According to the testimony of Kendrick upon direct examination:

Q: . . . what caused the spill, what failed?

A: The failure of the gasket on the nut.

Q: Did the valve fail?

A: No, sir.

Q: Is that valve still out there?

A: Yes.

Kendrick denied having termed the valve "old". If the rendition of Kendrick's statement by Mrs. Harmon was accurate, it might be construed as some indication that the *gasket* was old or deteriorated. However, while Kendrick did testify that the gasket malfunctioned, counsel failed on cross-examination to elicit any evidence that the malfunction occurred because of improper inspection or maintenance procedures by Sohio. Furthermore, no evidence

was presented as to the standard of care within the pipeline industry as to the maintenance of pipelines, so it is impossible to determine whether Sohio deviated from that standard.

The only other evidence offered which might show negligence was Kendrick's alleged statement, as testified to by Mrs. Harmon, that the spill was Sohio's responsibility, and they would clean it up. At trial Kendrick admitted only that Sohio had a responsibility or a moral obligation to clean up the oil, not that the responsibility arose because Sohio was at fault.

An insufficiency point of error should be sustained if the evidence is "factually insufficient to support a finding of a vital fact." Calvert, "'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Texas L.Rev. 361 (1960). The vital fact in issue here is whether Sohio was negligent in the maintenance of its pipeline, thereby causing the leak which damaged plaintiff's property. With the evidence as it is in this record, it is insufficient to establish that the failure of the gasket could be attributed to a lack of due care by Sohio. For this reason, the judgment of the trial court must be reversed and the cause remanded to the trial court.

The judgment of the trial court is reversed and the cause is remanded for a new trial.